## CAPITAL TRACTION CO. v. LYON.

Court of Appeals of District of Columbia.
Submitted January 5, 1928.     Decided February 6, 1928.

Petition for Rehearing Denied February 25, 1928.

No. 4593.

1. Evidence ⊛⟹150—Doctor's testimony in personal injury action as to hemoglobin test of plaintiff's blood after accident held admissible under circumstances.

Testimony of doctor in personal injury action as to result of hemoglobin test made of plaintiff's blood after he was taken to emergency hospital held admissible, in view of previous testimony that plaintiff's color before receiving wound had been ruddy, and after accident he was pale, and that color gradually returned during healing of wound; testimony relative to hemoglobin count being in some degree corroborative of statement that plaintiff was pale after accident.

2. Trial ⊛⟹139(1)—Directed verdict for defendant is properly denied, after submission of evidence on both sides, if any evidence warrants verdict for plaintiff.

Where motion for directed verdict for defendant was made after evidence on both sides

had been submitted, it was properly denied, if there was any evidence in case which would warrant a verdict for plaintiff.

3. Carriers ⊛⟹320(19)—Negligence of street railroad in operation of car, resulting in injury to passenger when car lurched, held for jury.

In action against street railroad to recover damages for personal injuries to passenger, when car lurched while passenger was preparing to leave car, alleged to have resulted from negligent operation of street car, evidence held sufficient to require submission of case to jury.

4. Carriers ⊛⟹348(5)—Instructions in passenger's action against street railroad, in effect stating that leaving seat while car was moving constituted contributory negligence, held properly denied.

In passenger's action against street railroad for injuries alleged to have resulted from negligent operation, instructions which in effect told jury that plaintiff was guilty of contributory negligence if he left his seat while car was moving, and failed to protect himself by grasping a strap or other means of support, held properly refused, since modern traffic conditions require that street railroad passenger shall be prepared to alight when car stops.

5. Trial ⊛⟹260(8)—Refusal to give instructions on contributory negligence substantially given by court held not error.

Refusal of court to give requested instructions as to contributory negligence held not reversible error, where such instructions were substantially given by court.

6. Trial ⊛⟹333—Jury not disapproving of clerk's statement that verdict was for plaintiff in certain sum will be held to have returned such verdict.

Where jury, after announcing verdict for $500 under one count and $4,500 under second count, signified no objection to clerk's statement that their verdict was in favor of plaintiff and damages assessed at $5,000, jury will be held to have returned verdict and assessed damages, in such sum.

7. Trial ⊛⟹340(2)—Motion to correct minute entry of verdict is too late, when made after jury's discharge.

Motion to correct minute entry made by clerk in accordance with announcement in open court of verdict, which was not only not disapproved by jury, but evidently accepted by them as correct, comes too late, when made after discharge of jury.

Appeal from the Supreme Court of the District of Columbia.

Action by Robert M. Lyon, an infant, by his mother and next friend, Mae J. Lyon, against the Capital Traction Company. Judgment for plaintiff, and defendant appeals. Affirmed.

F. J. Hogan and E. L. Jones, both of Washington, D. C., for appellant.

W. J. Lambert and R. H. Yeatman, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal from the judgment rendered in favor of the plaintiff and ' appellee and against the defendant and appellant for the sum of $5,000 in an action to recover damages for personal injuries alleged to have been sustained by the plaintiff as the result of the negligent operation by defendant of a street car used by it as a common carrier.

On the trial of the case, after issue joined, and before a jury duly impaneled, the plaintiff testified that on the 1st of June, 1925, he boarded the defendant's Fourteenth and Colorado Avenue car at Fifteenth and Pennsylvania avenue, intending to transfer to a Takoma Park car at the loop, which is at the junction of Fourteenth and Colorado avenue; that when the car reached the loop *or was just rounding the first curve,* he arose from his seat and moved toward the front of the car; that he grabbed hold of the seat and hesitated a moment, and that as the car straightened out momentarily he took a step toward the front of the car; that, just as he reached midway of the first long seat in the front of the car, the car gave a violent lurch and completely threw him off his balance, and at the same time twisted him around to the left; that he grabbed for the straps hanging in front of the car and missed them; that the car then gave another severe lurch, which flung him down in the seat that ran along the front of the car; that his head struck against the window pane, and his right arm and right elbow went through the pane of glass; that the lurch was very much greater than that which he usually experienced in going through the loop; that the speed of the car *in passing through the loop was quite a bit faster than usual;* that after the accident he lost a great deal of blood, but retained consciousness until he reached the hospital, where he remained for 5 or 6 days.

On cross-examination the plaintiff said that he had been living in Takoma Park for 2 years prior to the accident, and traveled from his home to work on the Capital Traction Company's cars; that he had at various times used the transfer at the loop, but that he usually took the car straight through to Takoma; that he knew that the loop was there, and that he was familiar with the lurch that takes place when cars pass around the loop; that he knew there was going to be a lurch; that on the day of the accident the car upon which he was injured was going quite a bit faster than was usual; that he could not estimate the speed in miles per hour, but that it was going very fast; that his recollection is *that he arose from his seat just as the car was turning into the first turn.*

Jesse Benjamin testified, on behalf of the plaintiff, that he was a passenger on the car on which plaintiff was injured and that the accident happened on the loop at the junction of Fourteenth and Colorado avenue; that the witness was seated at the right-hand side of the car, near the front; that as the car entered the loop, and as it passed the first curve into the straight stretch near the stop sign, the front of the car lurched violently; that the witness was standing up at the time of the lurch, and caught the handle of the front seat opposite where he stood to save himself from falling; that he then saw the plaintiff, who was in front of him, fall to the right, his arm passing through a closed window, crashing and breaking the glass; that the car proceeded for about a length after the crash before it came to a stop; that at the time of the lurch the plaintiff was about midway between the front cross-seat and the door; that the witness did not recollect in what seat the plaintiff was seated when he arose; that when plaintiff's arm went through the window it was cut, and that he was bleeding profusely; that the witness at the time of the accident had been riding in the cars of the defendant for at least 5 years, or probably more, and that the speed of the car *in going into the loop* at the time of the accident was greater than usual, and that by that he meant unusually fast; that the lurch which threw the plaintiff was more violent than was usually the case on going through the loop.

On cross-examination the witness stated that the car upon which the plaintiff was injured was going at a much higher rate of speed than cars usually go when they enter the loop.

Dr. Roy Lyman Sexton testified, for the plaintiff, that he was a graduate of the Georgetown Medical School, and that in the Emergency Hospital the witness gave medical attention to a wound on plaintiff's arm which had been sutured by surgeons; that in the hospital witness found plaintiff in a semicomatose, pale, exsanguinated condition, and with a faint, weak, and somewhat rapid pulse; that he was the doctor for plaintiff's family, and that prior to the injury to his arm the plaintiff was of a ruddy color and was in excellent health. The witness was then asked if the plaintiff's color had come back to normal, so far as he was able to observe,

to which he replied: "It was pretty difficult to tell from his color, but from the test of the hemoglobin of the blood, which we do from time to time, it is only mildly deficient now. It is partially deficient—hemoglobin of about 80, when 90 is about normal." Counsel for the defendant thereupon objected to the doctor's statement, and moved that it be stricken from the record, unless there was some testimony to show that the doctor had tested plaintiff's blood prior to the accident. The court overruled the objection, and to that ruling defendant's counsel was allowed an exception.

Alfred E. Mann testified, on behalf of the defendant, that he was employed by the Capital Traction Company as a motorman on the car on which the plaintiff was injured; that before entering the loop he slowed down his car, and *that when it entered the loop it was going at about 6 miles an hour;* that there was no unusual jerking or jolting as the car went around the loop, and that he brought the car to a stop at the regular stopping place at the east side of the loop.

On cross-examination the witness stated that. in passing the plow pits it was necessary to shut off the current; that after he heard the crash, and after the car had proceeded about 3 feet, he applied his brakes; that he did not use the emergency brake, but made an ordinary service stop; that a car going 5 or 6 miles an hour may be stopped within 5 feet by using the ordinary brake. (According to the map in the record, the plow pits are about 35 feet south of the beginning of the loop. The point marked on the map as the place at which the accident occurred is about 65 feet north of the beginning of the loop.)

Annetta S. Ellis testified, for the defendant, that she had been living in Takoma Park for 10 years, and that the car on which the plaintiff was injured *was going at the usual rate of speed when it entered the loop;* that she did not notice any unusual jerking or jolting as it went around the loop; that she traveled back and forth on defendant's cars continually, and was familiar with the way they were operated at the loop; that she had just gotten up from her seat and was standing when the car went around the loop; that the jolt at the time of the accident was just the same as any other jolt that she noticed when the car went around the loop.

On cross-examination the witness stated that she was not paying much attention to the speed of the car, but that at the time of the crash there was no unusual lurch of the car; that she braced herself to meet it, as she knew

that it was coming; that she did not pay any particular attention to the speed of the car, because it did not seem unusual to her; that her mind was centered on getting the Takoma car, which might be waiting at the Takoma crossing.

Ruth Ellis, a witness for the defendant, stated that when the car went around the curve it was going just as it always does when it stops, and that she noticed no unusual jerking or jolting; that there was no more violent jerk on the occasion on which the plaintiff was hurt than there was on any other occasion; that her mother was standing in the aisle of the car when it went around the curve just before it came to a stop, and that she was not knocked or thrown down.

On cross-examination the witness stated that she was 10 years old at the time of the accident and that she was not paying any attention to the movement of the car when it went into the loop.

Henry Lee Allen Godfrey, conductor of the car and a witness for the defendant, testified that at the time of the accident he noticed nothing unusual in the jolting or jerking of the car as it went around the loop; that the front trucks of the car were *going into the second curve* on the right-hand side of the loop when the plaintiff fell; that the plaintiff had gotten up from one of the cross-seats and moved to the front of the car, and when the. lurch came he grabbed for one of the strap handles and missed it.

On cross-examination the witness said that at the time of the accident there was a lurch, but no more than usual; that there is bound to be a lurch when the car goes through a turn; that the lurch occurred when the front trucks of the car *went through the second curve* on the right-hand side, and that when the front trucks *hit the second curve* the rear trucks were still on the straight track; that the car did not go more than 5 feet after the crash came; that it did not go over 10 or 12 feet, as far as he could remember, and that traveling 10 or 12 feet after the crash left the rear of the car opposite the car stop sign; that there are six straps, three on each side of the car, and that if one is stepping from a front cross-seat forward he would have to step forward and then reach up to get a strap; he would have to take a step or a step and a half away from the cross-seat in order to reach the straps.

At the close of plaintiff's case there was no motion for a directed verdict, but, after all the evidence on both sides had been submitted, the defendant moved the court to instruct the jury to find a verdict for the de-

fendant on both counts of the declaration, on the ground, first, that there was no evidence showing negligence on the part of the defendant; second, that the plaintiff was guilty of such contributory negligence as barred his right to recover; third, that, if the car was running at an unusual and unsafe rate of speed after it went into the loop, the plaintiff assumed the risk of any injury he might suffer by going to the front of the car and standing without availing himself of the means put there to protect him; fourth, that there was no evidence showing that the jerk or jolt was unusual, or more severe than was to have been expected, if the car was running at the rate of speed testified to by the plaintiff's witnesses. The court denied the defendant's motion for an instructed verdict, and to that ruling an exception was taken and allowed by the court. Thereupon the defendant requested the court to instruct the jury as follows:

"First. It is a matter of common knowledge that electric cars, in passing over curves in the road, lurch, rock, or swing, and that this is unavoidable. The natural laws of motion cause the car to rock, swing, or lurch as it passes over curves. This cannot be prevented and is one of the risks which a passenger assumes. The plaintiff can only recover in this case by proving by a preponderance of the evidence that his injuries were caused by an unusual or extraordinary jerk or jolt, and that said unusual and extraordinary jerk or jolt was caused by the negligence of defendant's employees in charge of said car. If you find, however, that plaintiff has established by a preponderance of the evidence that on the occasion in question there was an unusual and violent jerk or jolt, and that this was caused by the negligence of defendant's employees in charge of said car, but also find that the plaintiff, prior to the accident in question, arose from his seat on defendant's car and stood between the two long seats in the front of said car, as said car was about to enter the curve or loop at or about Fourteenth and Kennedy Street N. W., and failed to protect himself by grasping a strap, or other means of support, installed in the car of said defendant to assist standing and alighting passengers to retain their balance, then you are instructed as matter of law that plaintiff's failure to avail himself of the facilities furnished by the defendant for his own protection and safety constituted contributory negligence on his part, and your verdict must be for the defendant.

"Second. If you find from the evidence in this case that the defendant's car on which plaintiff was riding was provided with straps to safeguard passengers against the necessary jerks and jolts incident to all moving street cars, and that the plaintiff failed to avail himself of said facilities, and that his failure contributed to the accident, then you are instructed as matter of law that he was guilty of contributory negligence, and cannot recover in this case, and your verdict must be for the defendant.

"Third. If you find from the evidence in this case that, at the time plaintiff left his seat, or after leaving his seat and prior to the accident, the defendant's car was being operated at a greater rate of speed than was customary, and that the plaintiff by the exercise of ordinary care knew or should have known this, then you are instructed as matter of law that the plaintiff is chargeable with the knowledge that there would be a jolt or jerk commensurate with the speed of the car as said car rounded said loop, and that by leaving his seat and standing in the aisle of said car he is guilty of such contributory negligence as will prevent his recovery in this case, and your verdict must be for the defendant.

"Fourth. If you find from the evidence that the plaintiff left his seat in the car and walked to the front of the car between the long cross-seats while the car was in motion and proceeding at a rate of speed which was much faster than the usual speed of cars at said place, and that when plaintiff left his seat said car had entered or was about to enter the curve or loop at Fourteenth street and Colorado avenue, and that plaintiff was familiar with the said loop, and knew that there was some jerk or jolt when cars passed through it at the normal rate of speed, then you are instructed as a matter of law that plaintiff was guilty of contributory negligence, and your verdict must be for the defendant.

"Fifth. If you find from the evidence that the plaintiff left his seat in the car and walked to the front of the car between the long cross-seats while the car was in motion and proceeding at a rate of speed which was much faster than the usual speed of cars at said place, and that when plaintiff left his seat said car had entered or was about to enter the curve or loop at Fourteenth street and Colorado avenue, and that plaintiff was familiar with said loop and knew that there was some jerk or jolt when cars passed through it at the normal rate of speed, then you are instructed that plaintiff assumed the additional risks incident to this exposed position, and if you find that the jerk or jar which occasioned the fall of the plaintiff was

only such jerk or jar as was to be expected from the movement of a car traveling at the rate of speed at which this car was traveling, then you are further instructed that the plaintiff would be guilty of contributory negligence, and he cannot recover in this suit, and your verdict must be for the defendant."

The court denied each of said instructions, and to that ruling the defendant excepted.

The court, among other things, charged the jury that negligence is the failure to exercise, under the circumstances of any given case, that degree of care which any reasonable man should exercise; that negligence may be a failure to do that which any reasonably careful, prudent man should do under the circumstances, or may be the doing of something that a reasonably careful, prudent man would not do under the circumstances; that the jury was called upon to determine, first, whether there was negligence on the part of the defendant; and, second, whether there was negligence on the part of the plaintiff which contributed to the accident; that in the ordinary operation of trolley cars there are movements or stoppages of the car which may result in throwing persons off their equilibrium; that such movements and stoppages in the ordinary operation of the cars are likely to happen, and that passengers take the risk of that kind of thing and must look out for themselves; that passengers must look out for the results of the ordinary operation of the car, and, if they do not, they must bear the consequences; that if the plaintiff satisfied the jury by a fair preponderance of evidence that there was an excessive rate of speed beyond what was ordinary, and that as a result the injury came about, the verdict should be for the plaintiff on the first count of the declaration, unless there was contributory negligence on the part of the plaintiff; that if, as alleged in the second count, the car was operated with a violent, extraordinary, or unusual jerk or jolt, and that the plaintiff was standing in the car preparatory to alighting, and was, as a result of the unusual and extraordinary jerk or jolt, thrown through the window, then the verdict of the jury should be against the defendant under the second count; that, if both the defendant and the plaintiff were negligently to blame for the accident, the plaintiff was not entitled to recover; that the burden of proving negligence on the part of the defendant rested on the plaintiff and that the burden of proving negligence on the part of the plaintiff rested on the defendant.

[1] The court did not err in refusing to strike out the testimony of Dr. Sexton as to the result of a hemoglobin test made by him of plaintiff's blood after the plaintiff was taken to the Emergency Hospital. Hemoglobin is the solid coloring matter of the red corpuscles of the blood, and testimony as to their count might well be regarded as immaterial, if no evidence had been introduced showing or tending to show the condition of plaintiff's blood prior to the accident. Dr. Sexton, however, before testifying as to hemoglobin count, had testified that plaintiff's color before receiving the wound in his arm was ruddy, that after the accident he was pale, and that during the healing of the wound his color gradually returned. The doctor's testimony concerning the hemoglobin count was in some degree corroborative of his statement that the plaintiff was pale after the accident, and was, therefore, admissible.

[2, 3] The motion for a directed verdict for the defendant was made after the evidence on both sides had been submitted, and was properly denied, if there was any evidence in the case which would warrant a verdict for the plaintiff. If the plaintiff arose from his seat and endeavored to reach the front of the car, when he knew that the car was approaching a curve at an unusual rate of speed, and that, therefore, an unusual lurch or jolt was inevitable, he was negligent, and assumed the risk arising from such conditions, and from leaving his seat to walk towards the front of the car. If, on the other hand, the plaintiff got up from his seat, and started for the front of the car, while the car was going slowly, or at its usual rate of speed, on approaching a curve, and the speed of the car was thereafter increased beyond what was usual or ordinary on approaching a curve, he was not negligent, and the accident which resulted in cutting an artery in his arm must be charged to the negligence of the company. The plaintiff himself testified that he arose from his seat just as the car was turning *into the first turn of the loop,* and that the car in passing through the loop was going quite a bit faster than usual. As the first turn of the loop is at the beginning of the loop, that testimony was open to the construction that the plaintiff, knowing two curves would be struck before the car stopped to let him alight, rose from his seat and attempted to reach the front of the car while the car was going at an unusual rate of speed. Benjamin testified that the speed of the car *in going into the loop* at the time of the accident was greater than usual, and that by that he *meant unusually fast.*

If a motion had been made for an instructed verdict on the conclusion of plaintiff's

case, the motion might well have been granted. The motion, however, for an instructed verdict, was not made on plaintiff's case, but on the evidence submitted by both sides, and the proposition which now confronts this court is whether there was any evidence in the case showing, or tending to show, that the plaintiff rose from his seat and walked towards the front of the car while the car was going slowly, or at its usual rate of speed, on entering the curve. Plaintiff's evidence is to the effect that he rose from his seat just as the car was turning into the first turn. The testimony for the defendant is, in substance, that the car on entering the loop had been slowed down to 6 miles an hour, and that it was then going at its usual rate of speed. It was the duty of the jury to reconcile, if reasonably possible, the testimony of all the witnesses in the case, and it was for the jury to say what weight or credence should be given to the whole or any part of the testimony submitted. According to the testimony of the conductor of the car, the lurch which threw the plaintiff through the window did not occur at the curve at the beginning of the loop, but at the *second* curve on the right of the loop, which, according to the map in evidence, is about 40 or 50 feet distant from the first turn. As there is some evidence in the record tending to show that the plaintiff left his seat and made for the front of the car while the car was proceeding at its ordinary speed in approaching a curve, we must hold that the motion for an instructed verdict was properly denied.

Washington R. & E. Co. v. Kramer, 44 App. D. C. 154b, cited by counsel for the defendant in support of the motion for an instructed verdict, is not applicable to the facts of this case. The plaintiff in Washington R. & E. Co. v. Kramer, supra, left his seat and the inside of the car, and took his place on the running board outside of the car, while the car, approaching a stop, was running at an unusual and high rate of speed. Kramer was therefore charged with knowledge that, when the car was brought to a stop, there would be an unusual jerk or jolt. In this case there is evidence tending to show that the plaintiff left his seat and proceeded inside of the car towards the door, while the car was slowing down and was not going at an unusual rate of speed.

[4] The court below did not err in refusing the first and second instructions hereinbefore set out. Those instructions, if given, would in effect have told the jury that the plaintiff was guilty of contributory negligence, if he left his seat while the car was moving at its ordinary speed and failed to protect himself by grasping a strap or other means of support provided by the defendant. Modern traffic conditions require that passengers on street railways shall be prepared to alight when the car stops, and that necessarily implies that under ordinary and usual conditions they must start for the door while the car is still in motion. The straps and other means of support installed by street railway companies are designed to assist passengers in maintaining their balance in cars operated in the usual manner, and to safeguard them, as far as practicable, from the harm which may result from the ordinary speed, jerks, or jolts necessarily incident to the operation of street cars, a risk which such passengers assume. It cannot be said, therefore, that a passenger is guilty of contributory negligence if he fails to grasp a strap or other means of support when there is an extraordinary or unusual lurch, jerk, or jolt, of which he has no warning, and which could not be reasonably foreseen.

[5] The instructions numbered in this opinion as third, fourth, and fifth, requested by the defendant, stating what constituted contributory negligence on the part of the plaintiff, were substantially given by the court, and the refusal of the court to adopt the language of the requested instructions was not reversible error. The court, in its own language, clearly defined what constituted negligence on the part of the defendant and contributory negligence on the part of the plaintiff. In order to determine whether or not the defendant was chargeable with contributory negligence, the jury was required to do nothing more than apply that definition to the facts of the case as it found them to be. The court, however, not only defined negligence and contributory negligence, but it took pains to say that passengers took the risk of the *ordinary* operation of street cars but that, if the car was operated at an excessive rate of speed beyond what was ordinary, then the plaintiff was entitled to recover for any injury received by him as the result of such operation, *unless there was contributory negligence on his part.* The court also expressly instructed the jury that, if the accident resulted from the negligence of the defendant and from the negligence of the plaintiff, a verdict should be returned for the defendant because the plaintiff could not recover if his negligence contributed to the happening of the accident. In addition to stating to the jury that the burden of proving defendant's negligence rested on the plaintiff, and the burden of proving plaintiff's negli-

gence was imposed on the defendant, the court informed the jury that, if the plaintiff was not shown to be negligent and the negligence of the defendant was proven, the plaintiff was entitled to recover, but that, if it was proven that plaintiff's negligence contributed to the accident, he was not entitled to recover.

The court's instructions properly defined negligence. The instructions stated that, if there was negligence on the part of the plaintiff contributing to the accident, it was contributory negligence which precluded a recovery, and correctly informed the jury that the burden of proving defendant's negligence rested on the plaintiff, and the burden of proving plaintiff's contributory negligence rested on the defendant. A careful consideration of all the instructions actually given by the court leaves us convinced that the refusal to give the instructions requested by defendant did not withhold from the jury proper information as to the law of contributory negligence applicable to the case, and resulted in no injury to the appellant.

[6] The foreman of the jury, in announcing its verdict, stated that the jury found for the plaintiff and assessed damages in his favor at $500 under the first count, and $4,500 under the second count, whereupon the clerk said: "Gentlemen, your foreman saith that you find a verdict in favor of the plaintiff, and that you assess his damages in the sum of $5,000, and that is your verdict, gentlemen of the jury; so say each and all of you." To that question of the clerk some of the jury answered in the affirmative and others merely nodded, but none of the jurors indicated that the verdict as announced by the clerk was incorrect. Of course, neither the clerk nor the court itself can usurp the functions of the jury, and frame a verdict which it did not render. That is not this case, however. No objection was made to the action of the clerk, or to his statement of the jury's verdict, 'and as such statement was not disapproved by any of the jurors, and was apparently accepted by them, we must hold that the jury returned its verdict for the plaintiff, and assessed damages in his favor in the sum of $5,000.

[7] If objection had been taken to the clerk's statement of the verdict, the court still had the power to instruct the jury as to the several forms of verdict which it might return, and had the right to direct the jury to retire and return the verdict which, conforming to such instructions, met with its approval. No timely objection having been made by the defendant to the clerk's announcement in open

court of the verdict, which was not only not disapproved by the jurors, but evidently accepted by them as correct, the defendant's motion to correct the minute entry made by the clerk in accordance with such announcement comes too late, when made after the discharge of the jury. The denial of such motion is therefore not reversible error.

We find no reversible error in the record, and the judgment appealed from is therefore affirmed, with costs.

Affirmed.