GROBER et al.
v.
CAPITAL TRANSIT CO. et al.

RILEY
v.
CAPITAL TRANSIT CO.

Nos. 5576–50, 327–51.

United States District Court
District of Columbia.

Feb. 10, 1954.

Joseph D. Bulman, Washington, D. C., for Jack Grober and others.

Paul J. Sedgwick, Washington, D. C., for Walter M. Riley and Silver Top Cab Co.

George D. Horning, Jr., and Hogan & Hartson, Washington, D. C., for Capital Transit Co.

YOUNGDAHL, District Judge.

In this negligence action the jury returned a verdict in favor of Jack Grober for $48,000 and for his wife, Ethel Grober, in the sum of $4,000. Ethel Grober's award is for loss of consortium. Plaintiffs asserted that defendants Silver Top Cab Company (hereinafter called the Cab Company) and Capital Transit Company (hereinafter called the Transit Company) were negligent and that their negligence proximately concurred in causing severe injuries to plaintiff Jack Grober, a passenger in a taxicab when a streetcar of Transit Company collided with a taxicab of Cab Company in an intersection accident.

In addition to the claim of plaintiffs Grober against the two defendants, the jury had before it the third party claim of Cab Company against Transit Company for property damage to its cab because of the alleged negligence of Transit Company, and the claim of Walter M. Riley, driver of the taxicab, against Transit Company for damages for personal injuries claimed to have been sustained proximately as the result of the negligence of Transit Company. Riley's claim was asserted in a separate action but was consolidated for trial with the Grober case.

The jury found for Transit Company in connection with the claims of Cab Company and Riley against it.

Transit Company and Riley have moved for a new trial. The Cab Company has moved for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Transit Company's motion will be considered first.

Transit Company asserts error in the Court's ruling in sustaining an objection to a question submitted to Transit Company's expert as to whether the stop made by the streetcar after contact with the taxicab was a good stop, whereas it allowed the expert to answer a question on cross-examination as to whether the distance which the taxicab was pushed down the track was an indication of the streetcar's speed at the point of collision. Besides the fact that the scope of questions allowed on cross-examination is broader than that allowed on direct examination, it is clear that if the Court permitted an answer to the first question it would have been a conclusion, whereas permitting the expert to answer the second question was only allowing him to testify as to information within his superior knowledge. It is true that experts are allowed to give their conclusions where the ability to draw a conclusion from the facts stated depends on professional or scientific training not within the range of ordinary training or intelligence, 20 Am.Jur., Evidence § 777. However, in this case, prior to the disputed question, the Court permitted the expert to testify how far a streetcar will travel when put into emergency at various speeds as well as how far the streetcar in this case actually went. These facts being before the jury, the conclusion as to whether the stop was good or not was a subject about which the jury was as able to judge as was the witness since it was a matter for common judgment. Kenney v. Washington Properties, Inc., 1942, 76 U.S. App.D.C. 43, 45, 128 F.2d 612. The testimony was excluded not because there was any fault to find with the witness or the sufficiency of his knowledge, but rather because his testimony was unnecessary. All the facts were before the jury to enable it to determine what

kind of a stop was made. (7 Wigmore, Evidence § 1918, [1940]). In any event no possible prejudice resulted to Transit Company from this exclusion.

As a further ground for a new trial, Transit Company complains of the Court's charge in two respects. First, defendant picks three words out of the context of the Court's charge on the ordinary care required of the motorman and contends that these three words requiring the motorman to "meet unforeseen emergencies" erroneously stated the standard of care required under the law. The jury was charged that the Transit Company, acting through its motorman, "was required to exercise that degree of care that an ordinary, prudent person would have used or exercised under the same or similar circumstances, considering the conditions of the road, the weather conditions, and other conditions then prevailing. It was the motorman's duty to watch the road and keep the streetcar reasonably under proper control and meet unforeseen emergencies." (Page 15, Transcript of Charge).

▇▇▇ Transit Company contends that charging it was the motorman's duty to "meet unforeseen emergencies" was imposing the liability of an insurer on the Transit Company. I do not believe this contention is well taken. One charged with ordinary care is under an obligation to apply such care to all situations—foreseen and unforeseen. One is not excused from all errors of judgment in an emergency by the fact that he is compelled to act immediately upon the sudden happening of an event. The fact that there was an emergency was only one important factor to be considered in determining whether there was negligence under the particular circumstances of the case. All emergencies are unforeseen. In essence the charge was that it was the motorman's duty to meet emergencies. This is the obligation of every man in day to day activity. See, Fruehauf Trailer Co. v. Gusewelle, 8 Cir., 1951, 190 F.2d 248, 251, certiorari denied 342 U.S. 866, 72

S.Ct. 105, 96 L.Ed. 651; Peck v. U. S., 10 Cir., 1949, 172 F.2d 336, 338; 79 A.L.R. 127. When the challenged words are considered in light of the entire charge on ordinary care, it is clear that the motorman had only to act reasonably when faced with the emergency with which he was confronted. Certainly a charge must be viewed as a whole rather than dividing it into isolated segments. Hecht Co. v. Jacobsen, 1950, 86, U.S.App.D.C. 81, 84, 180 F.2d 13.

▇▇▇ Transit Company next contends that the Court committed error in charging the jury that it was the duty of the motorman to maintain a proper lookout and to see what was there to be seen. (Page 15, Transcript of Charge). It is not claimed that this is not the law, but only that the taxi driver should have been charged with the same duty. It must be borne in mind that the Cab Company's contention was that the taxicab was stopped on the tracks when the streetcar struck it. The charge referred to was given as part of the general charge as to the motorman's duty, and before the general charge as to the taxicab driver's duty under the highest degree of care. The Court thus carefully endeavored to balance in its charge the respective duties of the motorman and taxicab driver. An objective reading of the entire charge indicates that the Court's charge submitted the case objectively without stressing one claim over the other. Moreover, when charging on the taxicab driver's duty, the Court included that the jury should consider not only what the taxicab driver did after he was faced with the emergency but how he happened to become involved in the emergency, as well as giving consideration to whether the circumstances were such that by proper care and foresight the driver should have apprehended the danger of a collision in making the turn. Where it appears on examination of the entire charge that the jury has been fairly and adequately instructed, the requirements of law are satisfied,

Cohen v. Evening Star Newspaper Co., 1940, 72 App.D.C. 258, 259, 113 F.2d 523. Though the words used were not exactly the same, the charge in no way imposed duties on the motorman which were not imposed on the taxicab driver.

Although no written requests for instructions were made by the Transit Company, all its oral requests were substantially given by the Court in its charge and only a charge as to last clear chance was included over Transit Company's objection. The objection of the Transit Company as to the inclusion of the charge on last clear chance is no longer relevant as the doctrine was not involved in the Grober case and Transit Company has been given a verdict in the Cab Company and Riley claims in which it was involved.

Because of the rather lengthy charge required by the consolidation of several cases and the great number of issues in one trial, it would seem that Transit Company is grasping at straws in endeavoring to find some basis for asserting a right to a new trial, when the only fault it can find with the charge is a few words taken out of context. An objective reading of the charge as a whole will indicate that the various claims were presented in a fair and balanced manner.

Another ground which Transit Company urges is that the verdict accepted was not the true verdict of the jury. The complaint is that the jury rendered a different verdict than that which was accepted and that, in any case, the verdict accepted was the result of unresolved confusion. The following happened:

When the jury first returned, the foreman announced that it found for Jack Grober and Ethel Grober against both defendants in the sum of $48,000 and $4,000 respectively, and for the Transit Company in the claims of Walter M. Riley and the Cab Company against it. On inquiry by the clerk as to whether that was the verdict of each of them, a juror rose and said that the foreman had misinterpreted the jury's "summation of the case". The Court said next, "Do you mean that these verdicts as reported by the foreman are not the verdicts of each of you?". The juror answered, "That is right." Without further inquiry the Court said, "I am going to send you back into the jury room for further consideration until you can iron that situation out and come to an agreement on what your verdicts are." (Page 9, Transcript of Charge)

When the jury returned to the courtroom the following occurred:

"The Clerk: Mr. Foreman, has the jury agreed upon its verdict?

"The Foreman: Yes, we have.

"The Clerk: In the case of Jack and Ethel Grober v. The Capital Transit Company and the Silver Top Cab Company, how do you find in the case of the plaintiff Jack Grober v. the Capital Transit Company?

"The Foreman: We have found in favor of the Plaintiff.

"The Clerk: In what amount?

"The Foreman: In the amount of $24,000 for Mr. Grober; in the amount of $2,000 for Mrs. Grober.

"The Clerk: How do you find in the case of the plaintiff Ethel K. Grober v. The Capital Transit Company?

"The Foreman: We find in favor of the plaintiff.

"The Clerk: In what amount?

"The Foreman: In the amount of $2,000.

"The Clerk: How do you find in the case of the plaintiff Jack Grober v. The Silver Top Cab Company?

"The Foreman: We find in favor of the plaintiff.

"The Clerk: In what amount?

"The Foreman: In the amount of $24,000.

"The Clerk: How do you find in the case of the plaintiff Ethel K. Grober v. The Silver Top Cab Company?

"The Foreman: We found in favor of the plaintiff.

"The Clerk: In what amount?

"The Foreman: In the amount of $2,000.

"The Court: Now, let me ask you, so that the record may be clear on that, is it the intention by these verdicts that the total amount of recovery of Jack Grober shall be $24,000? That is what your verdict is.

"The Foreman: The total amount of both items would be $48,000.

"The Court: That is not the way you are giving your verdict. The way you presented your verdict when you last reported, before I sent you back to the jury room, was that you were bringing in a verdict for Jack Grober in the total amount as against the two defendants of $48,000. That was your verdict as you read it to the clerk before, in answer to his question.

"Now the way you answered the question you are reporting a verdict in favor of Jack Grober against the two defendants in the total sum of $24,000. I just want to make it clear as to what your intention is.

"The foreman: The intention— the decision of the jury was a total of $48,000.

"The Court: All right. Then it is your intention by your verdict that there shall be a total verdict, as I understand it, in the sum of $48,-000 in favor of Jack Grober against the two defendants jointly? Is that the verdict of the jury?

"The Foreman: Yes.

"The Court: As to the plaintiff Ethel K. Grober, what is your verict? In what total amount?

"The Foreman: The total amount of $4,000.

"The Court: As against the two defendants? Is that your verdict?

"The Foreman: Against the two defendants.

"The Court: Then the record is clear on that." (Pages 10–12, Transcript of Proceedings)

After the verdicts in the cases of Cab Company v. Transit Company and Walter M. Riley v. Transit Company were received there was discussion at the bench. Counsel for the Transit Company there conceded that the total amount of recovery intended was $48,000 and $4,000. But he argued that the jury could apportion the verdict against each defendant and that the verdict of $24,000 and $2,-000 against each defendant should have been accepted. A poll of the jury was then begun, at which time No. 1 Juror Elkin became confused as to the proper form in which to state her verdict. After additional discussion at the bench the following occurred:

"The Court: Will the foreman please rise again. Will you please stand up.

"If there is any question about the way this foreman answers questions of the clerk, anyone of the jurors may so indicate if they are in disagreement with his answers to the questions.

The Court is going to try to clarify for the record just what the intention of the jury is in connection with the bringing in of these verdicts.

"Is it the intention of the jury to find liability and to respond in damages against one or both the defendants, the Transit Company and the Cab Company, in this case?

"The Foreman: Well, it is the intention of the jury to find both of them.

"The Court: Both of them liable?

"The Foreman: Yes.

"The Court: In other words, the jury finds that both defendants, Transit Company and Cab Company, were negligent and their negligence was the proximate cause of the damage to the plaintiffs Grober? Is that the verdict of the jury? Is any juror in disagreement on that proposition?"

(There was no response).

"The Court: Then I will ask this further question: Is it the intention of this jury, or what is the feeling of the jury as to the amount of damages that the plaintiff Jack Grober is entitled to recover from each of these defendants?

"The Foreman: Your Honor, twenty-four thousand from each.

"The Court: You mean it shall be a total amount of twenty-four thousand or—

"The Foreman: No; it shall be a total of forty-eight thousand.

"The Court: Under the instruction of the Court the jurors are not permitted to separate the amounts. Under the instructions of the Court the jury must find a total amount as against both defendants if they find liability.

"The Foreman: The total amount, Your Honor, was forty-eight thousand.

"The Court: Is it the jurors' conclusion, then, that there shall be a total verdict of $48,000 against both defendants?

"The Foreman: In the case of Mr. Grober.

"The Court: In the case of Mr. Grober. Is that right?

"Mr. Sedgwick: Your Honor, as you asked that question I was watching the jury. I observed that some nodded their heads in approval and some did not.

"The Court: Thank you for calling my attention to it. Is any juror in disagreement on that total amount, that the verdict shall be $48,000 in favor of Jack Grober against both defendants?"

(No response).

"The Court: The effect of that verdict is that the total recovery by such plaintiff shall be $48,000, but that both defendants are liable for that sum. That is the effect of that verdict. Is any juror in dis-

agreement on that verdict? If so, please rise."

(No response). (Pages 21-23, Transcript of Proceedings).

The verdict as to Mrs. Grober against both defendants was then taken without difficulty. The jury poll was again resumed at which time Juror Elkin again became confused and attempted to apportion the damages between the two defendants. There was more discussion at the bench. At this time counsel for the Transit Company repeated his contention that the jury could bring in separate verdicts and find each defendant liable for only one-half of the total amount which it decided would compensate the plaintiffs for their injuries. The Court made it clear to counsel that under the rules of law and the instructions of the Court the jury could not apportion the verdict. The jury was sent back to the jury room with the following statement:

"The Court: I want to make it clear once more for the record, and I am going to send you back to the jury room. Please, members of the jury, have it clear before you come back to the courtroom. Have it clearly understood so there is no question about it.

"Under the Court's instructions it is not possible for you to bring in separate verdicts against the Capital Transit Company and the Cab Company in certain amounts of money. If you find that both of the defendants, Transit Company and Cab Company, are liable under the Court's instructions, the verdict must be, as far as the Grobers are concerned, in a certain amount against both defendants.

"Is there any question about that in your minds?

"I do not want to try to suggest what type of verdict you should bring in or what has been your conclusion. I want to be careful in simply stating what the law is, so

that you can make up your own minds as to what your verdict should be.

"I think after a case has taken a week to try that in the proper administration of justice it is important that we should try to bring a lawsuit to a conclusion if we can. Therefore, I am going to send you back to your jury room to have you consider this matter again and, in accordance with the Court's instructions, bring in a verdict that will comply with the instructions of the Court and what I have said to you now in connection with the type of verdict you can bring in." (Pages 29-30, Transcript of Proceedings)

When the jury returned the foreman announced verdicts against both defendants in the sum of $48,000 for Jack Grober and $4,000 for Ethel Grober. On inquiry, the jury indicated in the affirmative that this was their verdict. No poll was requested.

There is one thing that was unmistakably clear from the entire proceedings in connection with receiving the verdict. The jury had agreed upon a total recovery for Jack Grober in the sum of $48,000 and Ethel Grober in the sum of $4,000. There was never any doubt about that. The record completely sustains that proposition and counsel for Transit Company fairly and frankly conceded it at the time and now concedes it in his argument for a new trial. The only thing the jury was confused about was their right to apportion the verdict.[1]

When the jury returned the second time and the Court discovered they were endeavoring to apportion the verdict, it clearly told them they could not do so and sent them back for further deliberation. The proceedings indicate that the Court was very careful in insisting that the jury be sent back to the jury room to discuss and agree upon the type of verdict to be returned.

There was clearly no coercing or influencing of the jury in its exclusive prerogative in determining the verdict. Transit Company does not claim so. But Transit Company insisted at the time of the return of the verdicts and insists now that the jury could properly apportion the verdict. This position is not sustained by the authorities.

■ The rule is well settled that in the absence of a statute authorizing a jury to sever or apportion damages against joint tort-feasors, an assessment of damages against those sued jointly for a wrong must be for one sum against all those found liable, and a verdict which attempts to apportion the liability among the several defendants by directing the amount each shall pay is irregular. 53 Am.Jur., Trial No. 1103; 108 A.L.R. 792. Cases in this jurisdiction which support this general rule include The Washington Market Co. v. Clagett, 1901, 19 App.D.C. 12; and Freid v. McGrath, 1943, 77 U.S.App. D.C. 385, 135 F.2d 833.

■ Where, as here the Court charged the jury without objection, the law is that the doctrine of comparative negligence does not apply, any or all of the tort-feasors may be held liable for the whole of the damage resulting from their tortious act. McKenna v. Austin, 1943, 77 U.S.App.D.C. 228, 134 F.2d 659; 52 Am.Jur., Torts No. 123. They may be sued separately or jointly, but in either case there may be only one ver-

---

1. It is certain that the jury did not *first* find each defendant liable to the extent of $24,000 and $2,000 and then multiply by two. Rather, from the outset, the jury decided on a figure of $48,000 and $4,000 and then, out of confusion as to proper procedure, apportioned the amount. This removes whatever importance one might attach to the language in Ohio Valley

Bank v. Greenebaum Sons Bank and Trust Co., 4 Cir., 1926, 11 F.2d 87, 89, where the Court distinguished situations where the jury *first* finds joint liability for the entire amount and then seeks to apportion the liability from those where the jury *first* finds for a separate sum against each defendant.

dict for a single sum, regardless of the varying degrees of culpability. The charge was clear in this respect. Transit Co. having admitted that the doctrine of comparative negligence does not exist in this jurisdiction and that the jury found against both defendants in the total amounts of $48,000 and $4,000 in effect admits that a verdict of $24,000 and $2,000 against each defendant could not properly be accepted.

Moreover, no valid objection can be made that the method used by the Court in correcting the attempted apportionment was inappropriate. As the transcript indicates, the Court sent the jury back to the jury room until agreement and a verdict should be reached which was consistent with the Court's charge.

██ The method followed has the approval of the cases in this jurisdiction where either a juror dissents or where the jury's verdict is not consistent with the Court's instructions. Bruce v. Chestnut Farms Chevy-Chase Dairy, 1942, 75 U.S.App.D.C. 192, 193, 126 F.2d 224; Washington Times Co. v. Bonner, 1936, 66 App.D.C. 280, 293, 86 F.2d 836; Capital Traction Co. v. Lyon, 1928, 57 App.D.C. 396, 402, 24 F.2d 262. Two other cases in this jurisdiction concern the precise problem now presented.

In one, Washington Market Co. v. Clagett, supra, the jury found against each of two defendants in the sum of $1,000, to be paid $500 by each. The Court of Appeals said:

"The jury simply undertook the inadmissible thing of making an equal apportionment of the amount of the verdict to be paid as between the two defendants. This they could not do. They had found the amount of the joint liability to be $1,000, and they had nothing to do in apportioning the payment between the defendants. The verdict as a whole was irregular and informal. But it would have been competent for the court to have received the verdict and amended it by striking out, as surplusage, all after the finding of the joint liabil-

ity, that is to say, after the $1,000, leaving the verdict to stand for that amount; that being the manifest intention of the jury as to the amount of their joint finding. But it was equally competent to the court to pursue the course that was pursued, that of returning the verdict to the jury for correction." 19 App.D.C. at pages 27–28.

In the second, Freid v. McGrath, supra, the jury brought back a verdict in the sum of $425 against two defendants and the verdict was amended to coincide with the jury's intention to hold the defendants liable for a total of $850. In upholding the action of the District Court in correcting the verdict a week after it was rendered on affidavits of four jurors and the testimony of ten that they had intended the total recovery to be $850, the Court said:

"If the jury actually found a verdict in the amount of $850.00, but mistakenly apportioned that amount between the two defendants, the District Court, if properly convinced of that fact, would have power to correct the verdict accordingly; so that it would express the conclusion actually reached, and finally agreed upon by the jury—but mistakenly reported to the court." 77 U.S.App.D.C. at page 386, 135 F.2d at page 834.

This case is much stronger than the Freid case in that there the instructions of the Court were not clear to the jury even at the time it was excused from duty. Moreover, there is no doubt as to the jury's intention in the present case, whereas there may have been some doubt as to its intention in the Freid case. In addition, as the dissent strongly points out, the correction was made retroactively a week after the verdict had been accepted. During the time which elapsed before correction there was the possibility of the jury being pressured to change its mind.

Both the Freid case and the Washington Market Co. case support the proposition that in the present situation the

Court could have properly amended the verdict on its own by striking out the attempt to apportion damages as surplusage. Regardless, the verdict as finally announced by the foreman, with deliberations only in the jury room, was for $48,000 and $4,000 against both defendants and, as previously stated, the Court is convinced that at all times the jury intended these amounts as the fair and just compensation for the injuries suffered.

██ Transit Company also urges that the verdicts were so excessive as to indicate that they were the result of passion and prejudice. In support of this contention Transit Company argues that the Court wrongly permitted plaintiff's lawyer to present the analogy of a $50,000 mink coat being destroyed in an accident in arguing on damages to the jury. The Court can see nothing prejudicial about the argument. There was no inference that such a fur coat was destroyed in this case. The fact that an argument may be effective does not control its admissibility.

██ The defendants made no attempt to dispute the extent of the injuries by medical testimony. The evidence shows the following: Special damages caused Jack Grober total $3,823, with future medical bills undetermined. He suffered five broken ribs, a broken pelvis, a displaced fracture of the right hip, a paralytic ileus and a massive hematoma on the right side. One of the broken ribs punctured a lung causing extensive hemorrhage. He was in the hospital for five weeks, during which time he was in a cast, had to be turned every hour, and required round-the-clock nursing for most of the period. While he was in the hospital his stomach distended to a point where it was necessary to insert tubes into his stomach to siphon off blood, and which resulted in a stomach hernia which will require an operation in the future. After he was taken home, bilateral phlebo-thrombosis developed which required him to keep his legs above his head for an extended period. As a result of the accident he walks with a definite waddle, he has a venous deficiency in his left leg, he has an unstable back, he cannot walk for more than a block without tiring, he cannot stand up for a long period of time, nor can he walk up a flight of stairs. These disabilities will remain with him the rest of his life. He wears a brace to support his back and will continue to wear the brace in the future. Mr. Grober is a man sixty-three years old who before the accident was in excellent physical condition and lived an active life as a fur buyer, taking frequent trips to New York and standing up for long periods of time waiting on customers. As a result of the accident he will live the rest of his life under a severe handicap. It is true that the verdict is substantial but the Court cannot conclude that it is excessive.

██ Both defendants contend that the verdicts are contrary to the weight of the evidence. There were six witnesses who testified on the question of liability, with varying views as to the speed of the vehicles, the manner in which the taxicab turned, the distance between the vehicles when they saw each other, the extent of oncoming traffic, and other matters affecting liability. More witnesses were produced who supported the Cab Company's theory of the case than that of the Transit Company. However, the jury was not required to give their evidence more weight. A careful review of the evidence indicates that there was sufficient evidence on the negligence of both defendants to submit the cases to the jury and to warrant a finding that both defendants were negligent, which proximately concurred to cause plaintiff's injuries.

██ The Cab Company asserts, in addition, that this was a situation in which both defendants could not be held liable. If the accident was caused by the negligence of one, Cab Company asserts, it could not also have been caused by the concurring negligence of

the other. A request for an instruction to this effect was refused. The many witnesses in this case merely gave their estimates as to speed, distance, etc. It is true that the testimony of no *one* witness fully supports the conclusions of the jury. But the jury is not obliged to accept the stories of witnesses completely as given. It is a jury's function to piece together the stories of all the witnesses, giving each such importance as it decides, until it has its own picture of how the accident actually happened. Of course it must reconstruct the accident from the testimony, but the conclusions reached were justified by the evidence heard. In reaching these conclusions it was unnecessary for the jury to infer facts not presented.

The jury could reasonably find that the taxicab driver negligently put his cab in a position of peril across the tracks, in violation of the highest degree of care owed his passenger, and that the streetcar was being negligently operated at an excessive speed, or that the motorman in other respects did not exercise reasonable care to avoid the accident. There was sufficient evidence for the jury to conclude that the streetcar was being driven too fast, or that the motorman was negligent in not bringing it to a stop; and that the taxicab cut in front of the streetcar, or could have completed its turn without danger, or should not have made the turn under the circumstances. This is not a situation where it is necessary to conclude from the evidence that the negligence of either driver was merely a condition existing at the time of the accident and was not an integral part of the proximate cause relation which caused the accident. The Court feels it is not inappropriate to add that if it were sitting without a jury in the trial of this case it would have found against both defendants.

■■ Cab Company contends that its requested instruction on unavoidable accident was wrongly refused. Clearly there was no evidence from which the jury could have reasonably concluded that the accident was unavoidable.

■■ Cab Company's remaining ground is that Sec. 22(a) of the Traffic Regulations was improperly included in the Court's charge. The Regulation requires simply that a car be driven at a speed which is reasonable under the circumstances, and that in every event the speed shall be such as to avoid colliding with any person or vehicle. There was evidence from which the jury could conclude that the taxicab was being driven at excessive speed under the circumstances. Cab Company maintains that the words "in every event speed shall be so controlled as may be necessary to avoid colliding" requires the conclusion that any operator of a vehicle involved in a collision has speeded. The Regulation does not compel this conclusion nor does such interpretation appear reasonable. The Regulation only sets up a standard in compliance with the common law duty of all persons to use due care in all circumstances. As Sec. 22(b) indicates, Sec. 22(a) is intended for circumstances where a special hazard exists that requires a lower speed, in compliance with the duty to use due care, than those speeds which are specifically designated in Sec. 22(b). In addition, the jury was specifically charged that it was for them to decide whether in view of all the facts and circumstances established by the evidence the speed requirement had been violated. Though the Regulation may not be as precise as is desirable, the Court cannot say that the Cab Company was prejudiced by its inclusion in the charge.

The litigants were represented in this case by able, experienced counsel who tried the case thoroughly and aggressively. The case took a week to try. With the record free from prejudicial error, as the Court finds it to be, to grant a new trial to defendants would be virtually giving them another chance with a new jury to have the issues determined in their favor. Obviously to

do so would be an encroachment by this Court on the jury's function.

The motions of the Cab Co., Riley and the Transit Co. are hereby denied in their entirety. An appropriate order will be entered.