William DANTZLER

v.

DEFENDER SHIPPING CO., Inc.

and

Earl J. Smith & Co., Inc.

Civ. A. No. 35611.

United States District Court
E. D. Pennsylvania.

April 26, 1968.

Edwin E. Naythons, of Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiff.

E. Alfred Smith, of Krusen, Evans & Byrne, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

BODY, District Judge.

Presently before the Court are the plaintiff's alternative motions for judgment n. o. v. and for a new trial. Interrogatories to the jury in this case were answered by a jury finding that the defendants, owners and operations of the S.S. "Smith Defender", were not negligent in any way. Negligence was the only theory of liability presented to the jury; thus, on November 21, 1967, we entered judgment in favor of the defendants.

■ On November 28, 1967, plaintiff's counsel filed the post-trial motions here at issue. According to the mandatory dictates of Local Rule 31(a), plaintiff's counsel was obliged to request the trial transcript from the court reporter *in writing* within ten days after filing his post-trial motions. However, counsel failed to do so. On December 14, 1967, sixteen days after filing and six days after the Rule 31 deadline, plaintiff's counsel requested the transcript from the court reporter *by telephone*. The reporter quite correctly refused to make the transcript without a permissive order from the Court, as authorized by Local Rule 31(b).

On December 21, 1967, plaintiff's counsel filed a nunc pro tunc motion under Local Rule 31(b), requesting an order authorizing the court reporter to transcribe part of the trial proceedings. This Court granted the plaintiff's motion and filed the appropriate order on the same day, December 21, 1967, thirteen days after the Rule 31 deadline.

■ After reexamination, we are convinced that we erred in granting the

plaintiff's nunc pro tunc motion. The commands of Local Rule 31 are mandatory, not directory, and should be strictly enforced, as we ourselves have recognized in cases subsequent to our order of December 21, 1967 in this case. See Kesler v. Amsco Industries, Inc., 285 F. Supp. 522, E.D.Pa., Jan. 25, 1968 [Body, J.] (defendant's written request for transcript *one day* beyond Local Rule 31 limit). See also Tarter v. Mylin, 258 F.Supp. 818, 819 (E.D.Pa. 1966), where our brother, The Honorable Harold K. Wood, observed that "the Rule is reasonable and * * * should be enforced vigorously if it is to have any effect whatsoever."

■■ The plaintiff's contentions that his failure to order the transcript within ten days was justified by "good cause" and thus excusable under Local Rule 31(b) should have been rejected by this Court. Plaintiff's counsel claimed that he simply had never been aware of Local Rule 31 or the ten-day limit; and further, that Rule 31 should not be enforced where the plaintiff's post-trial motions have merit. The latter contention is patently absurd; the former, patently inadequate. Counsel for the plaintiff is quite experienced in litigation before this Court. He must realize that ignorance of a published procedural rule in effect since January 1, 1965 is not a legally cognizable excuse for failure to comply with its requirements.

Nevertheless, because we ourselves misconceived the mandatory nature of Local Rule 31, and because we were loath to penalize the plaintiff for his attorney's negligence, we did grant the plaintiff's nunc pro tunc motion. Now, after the requested transcript has already been made, and after argument on the post-trial motions has already been heard, it would be pointless to vacate our order and to dismiss the post-trial motions for want of prosecution. The harm has already been done. We will decide the merit of the post-trial motions. However, we wish to make explicitly clear that we do consider that order to have been erroneous; that the plaintiff's

counsel did *not* have "good cause" for failing to comply with Local Rule 31(a); and that the order should not be considered precedent for any future permissive orders under Local Rule 31(b).

Before disposing of the plaintiff's post-trial motions, it is necessary to capsulize briefly the factual context of the instant litigation. The plaintiff, William Dantzler, was employed by the defendants as a member of the crew of the S.S. "Smith Defender" for two to three months in the spring of 1963. During the voyage, the plaintiff's violent conduct caused the officers of the ship to place him in leg irons in the ship's hospital, where he was restrained for six days as the ship passed from Chittagong, Pakistan, to Colombo, Ceylon. According to the only theory of liability submitted to the jury, the defendants were negligent in their treatment of the plaintiff, and their negligence caused the plaintiff to suffer a severe emotional and nervous breakdown which allegedly will require extensive future medical treatment and will prevent the plaintiff "from performing his usual duties, occupations and avocations." Plaintiff's Complaint, p. 4.

At the conclusion of the trial, interrogatories were presented to the jury. In response to the first interrogatory, which asked "Were the defendants negligent in any manner whatsoever?", the jury replied, collectively and individually, "No". The Court accordingly entered judgment for the defendant.

### I. *Judgment N.O.V.*

■ Pursuant to F.R.Civ.P. 50(b), the plaintiff has moved for judgment notwithstanding the verdict. A motion for judgment n. o. v. can be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Upon plaintiff's motion, the evidence must be viewed in the light most favorable to the defendant, who secured the jury verdict in this action.

■ Our ability to review any "evidence" in this case is extremely limited by the plaintiff's failure to order a com-

plete transcript of the trial proceedings. As noted supra, plaintiff's counsel requested only a partial transcript; the only testimony transcribed deals with the Court's refusal to allow plaintiff to present evidence of the defendants' alleged failure to pay maintenance and cure. We had assumed that the plaintiff's post-trial motions would not refer to any part of the trial which he had not had transcribed. Indeed, to the extent that the plaintiff's post-trial motions depend on such untranscribed testimony, those motions should be dismissed for want of prosecution under Local Rule 31.

In support of his motion for judgment n. o. v., plaintiff argues that "at no time did the officers or agents of defendants administer any medical care whatsoever by a physician until June 11, 1963, and * * * this failure * * * warranted the Court in charging the jury that the defendants were negligent." Plaintiff claims that this testimony was "undisputed".

■ Even if the testimony on this point was available and was undisputed, it would not require a directed verdict on the issue of the defendants' negligence. Negligence was the only theory of liability presented to the jury in this case. Whether the defendants' failure to provide medical care was negligent depends upon all the facts and circumstances of the case. In support of their decision to transport Dantzler to Ceylon for treatment, the defendants presented testimony that a typhoon had recently devastated the coastal area surrounding Chittagong, Pakistan, where the ship was at anchor when the plaintiff suffered his apparent breakdown. The harbor was crowded; berthing delays were customary; transportation inland and lines of communication had been seriously disrupted. Considering the evidence in the light most favorable to the defendants, we believe that the jury could have fairly concluded that the defendants acted reasonably and thus non-negligently under the circumstances.

Additionally, we disagree with the plaintiff's contention that it is undisputed that plaintiff received no medical care until June 11, 1963. The defendant alleges and we remember testimony to the effect that a physician came aboard the S.S. "Smith Defender" in Chittagong harbor and examined Dantzler on June 6, 1963, within a few hours after the plaintiff was placed under restraint. Further, the defendant did allow the plaintiff to take medication for his emotional distress which the plaintiff himself possessed. The jury might well have concluded that these efforts at medical ministration were reasonably sufficient under the circumstances. The plaintiff's recollection of the testimony may differ from ours; but since he has chosen not to produce the transcript on this point, we must rely on our memory and on our notes, rather than on what he alleges as "undisputed".

The plaintiff also contends that "it was uncontradicted" at trial that a booklet aboard the ship entitled The Ship's Medicine Chest and First Aid at Sea specified "without equivocation. * * * that when a seaman became excitable as plaintiff did in this case, he must be given phenobarbital and never placed in irons." The plaintiff contends that because the defendants disregarded this "uncontradicted" instruction, the Court should have directed a verdict in favor of the plaintiff on the issue of negligence.

The First Aid booklet recommends that phenobarbital may be given in order to quiet an excited or delirious patient. Here, the ship's officers gave the plaintiff his own medication; and shortly after he was restrained, he became calm again. To give the plaintiff his own medication *and* the phenobarbital might have been dangerous in itself. Since the course chosen by the ship's officers resulted in calming the plaintiff, it would appear that the additional precaution of phenobarbital was not necessary.

The First Aid booklet does advise that a severely excited patient "should not be put in irons". P. 321. However, at

p. 289, the booklet also recognized that if a patient is in a delirious condition, "mechanical restraint may have to be used as a last resort", p. 289, or "when absolutely necessary", p. 290, and only with the permission of the Master of the ship, p. 290. According to defendants' testimony, the plaintiff had threatened the lives of three seamen, accused a seaman of "stealing" overtime hours from him, and held a knife to the neck of one seaman with whom he had become enraged. In the opinion of the ship's officers, his conduct was mortally dangerous to others and to himself. The ship's Master concluded that it was necessary to restrain the plaintiff in the ship's hospital by a leg iron with a thirty-foot chain on his left ankle.[1] Under the circumstances, the jury might well have concluded that the Master's decision was not unreasonable.

Furthermore, the plaintiff's contention that *all* the medical testimony disapproved of the leg iron method of restraint is not consistent with our memory of the testimony offered by the defendants' psychiatric expert. The defendants' witness observed that an individual such as the plaintiff, with a history of paranoid-schizophrenic illness, might benefit from being placed under mechanical restraint; that the restraint might relieve him of the anxious fear that he would harm himself or another. Coupled with the evidence that the plaintiff *was* calm after he was restrained, the jury might reasonably have concluded that the Master's decision was in the best interests of all concerned.

The plaintiff's argument that a directed verdict on negligence is necessary under the logic of DeZon v. American President Lines, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065 (1942), is unpersuasive. The *DeZon* opinion explicitly measures the extent of the duty to provide maintenance and cure by "the serious-

ness of the injury or illness and the availability of aid", and only requires that "reasonable measures" be taken. Under the circumstances of this case, the jury considered and approved the reasonableness of the defendants' actions.

We find no merit in any of the grounds urged by the plaintiff in support of his motion for judgment notwithstanding the verdict. Accordingly, the motion will be denied.

## II. *Motion for a New Trial*

(A) The plaintiff contends that the Court erred in affirming and reading to the jury the defendants' point for charge No. 15. Plaintiff contends that the point was prejudicial because it might have misled the jury to believe that the S.S. "Smith Defender" was at sea when the plaintiff threatened his shipmates, whereas in fact the ship was in the Chittagong harbor.

The point for charge reads in part that "the Master of a vessel is not bound to disregard every other consideration and put into the nearest port when a seaman is ill aboard his vessel". It further notes that "the proximity of an intermediate port" is one of the factors to be considered in determining whether the Master has acted reasonably.

■ The plaintiff had contended at trial that the defendant, among other suggested courses of action, could have and should have put into an intermediate port during the voyage from Chittagong, Pakistan, to Colombo, Ceylon. This point for charge was correctly addressed to that argument. We do not believe it could have caused the jury to forget the fact admitted by the defendant and proved at trial that the plaintiff was originally restrained in the ship's hospital while the ship was in the Chittagong harbor. Furthermore, the Court specifically charged the jury that their collective recollection of the testimony, rather than that of the Court or of the

---

1. It should be noted that after the plaintiff was restrained in the ship's hospital, he remained calm except when the door to the hallway was closed. Since a closed room appeared to aggravate his condition, the leg iron may have been the wisest method of mechanical restraint available.

lawyers, should determine the facts in the case. See Charge of the Court at p. 58.

■ The plaintiff's argument is without merit.

(B) The plaintiff further contends that the Court erred in affirming defendants' point for charge No. 21, which reads as follows:

"21. You may make no award of money damages to the plaintiff for any worsening or aggravation of his condition which you may find occurred due to his own conduct."

The plaintiff argues that this instruction on damages indirectly interjected the issue of contributory negligence into the case; that the defendants had not presented any evidence of plaintiff's contributing negligence; and that the Court should necessarily have also included an appropriate instruction on comparative negligence.

Specific interrogatories were submitted to the jury, and the jury found that the defendants had not been negligent in any way. Therefore, even if the point for charge at issue was erroneously given, which we doubt, it nevertheless was not prejudicial to the plaintiff's case. Contributory negligence was not a factor in the jury's decision.

The plaintiff's argument is without merit.

(C) During the course of the trial, the defendants failed to call the Master and two crewmen of the S.S. "Smith Defender", three witnesses who could have testified about the plaintiff's conduct and treatment during the voyage. The defendants did not take the depositions of any of these three witnesses nor did the plaintiff.

With respect to the absence of the Master, the defendants explained that the Chief Officer, who testified at some length during the trial, had witnessed the same events and given substantially the same testimony as would have been given by the Master; thus the Master's testimony would have been merely cumu-

lative. The defendants also explained that, at the time of trial, the Master was aboard a ship enroute from Vietnam and could not be produced as a witness. Also, upon learning that the Master was on board an unreachable ship, the defendants applied for a continuance of the trial; the continuance was opposed by the plaintiff and denied by the Court, Chief Judge Clary presiding, on November 1, 1967.

The plaintiff submitted a point for charge to the Court which was approved and read to the jury. The point for charge, No. 21 offered by the plaintiff, read in part as follows:

"[W]here evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and without satisfactory explanation, he fails to do so, an inference may be drawn that the evidence if produced would be unfavorable to him."

However, the defendants had pointed out that the Master's name and address had been provided to the plaintiff in the defendants' pre-trial memorandum; that the Master's identity appeared in the Official Log of the ship which had been in the custody of the U. S. Coast Guard since 1963; and that the plaintiff could therefore easily have learned who the Master was. Further, the defendants argued that the plaintiff could have taken the Master's deposition, as provided in F.R.Civ.P. 26(a); that the Master's deposition could have been obtained merely by filing notice upon defense counsel; and that the plaintiff simply chose not to do so.

In response to the defendants' arguments, the Court concluded that under the circumstances of the case, the instruction on the defendants' failure to produce the Master should be slightly tempered. Therefore, at the conclusion of the point for charge No. 21, the Court added as follows:

"I call your attention, members of the jury, to the fact that this witness was also available to the plaintiff for depo-

sitions. . . . so I call that to your attention, that if he was available to the defendants, he was available to the plaintiff, and the papers so indicated as well as the statement of counsel to the jury some time during the course of the trial, but you will have to remember whether what I say is correct."

The plaintiff argues that the Court's additional explanation "was prejudicial in that it not only gave the jury the impression that plaintiff's counsel had deceived them but violated the entire purpose of the rule involved".

■ In the opinion of the Court, the Master's testimony was equally available to both plaintiff and defendants.[2] Under the circumstances, the jury should certainly be aware of the fact that the plaintiff could have deposed the absent Master. That the plaintiff did not choose to take the deposition could reasonably affect the jury's decision on the strength of the adverse inference which might be made against the defendant. If the Master's testimony in fact would have been unfavorable to the defendant, and the Master's testimony was available to the plaintiff, common sense would ordinarily dictate that the plaintiff would desire to obtain and produce that testimony. The plaintiff did not do so in this case, and his explanation for that decision is revealingly self-defeating; for the plaintiff explains that he is under no duty to produce the testimony of a witness whose testimony would prejudice the plaintiff's case. If the plaintiff did not call the Master because he believed the Master's testimony would support the defense, then the inference that the Master's testimony would *not* support the defense is obviously weakened. This is only common sense. See Cromling v. Pittsburgh & Lake Erie

R.R. Co., 327 F.2d 143, 148–149 (3rd Cir. 1963), wherein the Court observed that "the weight to be given to the absence of a witness is primarily one for the jury to determine by a common sense appraisal."

We do not impose any duty on the plaintiff to call defense witnesses. We merely point out that the jury, attempting to use its common sense to determine the significance of an absent defense witness, should be aware of the fact that the plaintiff could have produced that witness' testimony and chose not to do so. See generally II Wigmore on Evidence § 288, pps. 169–170, and cases cited therein (3rd Ed. 1940).

■ With respect to the defendants' failure to produce the two seamen, we also believe that our charge was proper. The seamen's addresses were known to the plaintiff and were included in the pre-trial memorandum. They were as available to the plaintiff as to the defendants. It was proper to inform the jury of that fact. Additionally, it would appear that their testimony would merely have been cumulative to the evidence and testimony already produced by the defendants.

(D) The plaintiff also contends that the Court erred in failing to permit the plaintiff to introduce testimony that the defendants' failure to pay maintenance and cure was a separate cause of action and basis for liability.

■ We have concluded that the Plaintiff's Complaint fails to plead adequately any separate "maintenance and cure" basis for liability. The only reference to maintenance and cure in the complaint appears in paragraph 7(i), which clearly pleads the defendants' alleged failure to provide maintenance and cure as a specific manifestation of the

---

2. Counsel for plaintiff contends in his brief that "the Master could not possibly have been produced by plaintiff or his deposition taken in view of the fact that he was clearly beyond the range of any subpoena used by this honorable court, having resided in Marietta, Georgia and his whereabouts never made known to plaintiff." Plaintiff's Memorandum, p. 11. The plaintiff's argument is refuted by Rules 26 and 37 of the Federal Rules of Civil Procedure and by Croming v. Pittsburgh & Lake Erie R.R. Co., infra.

defendants' negligence. The pleading did not give the defendants adequate notice that the plaintiff intended to argue maintenance and cure as a basis for liability separate from and independent of plaintiff's negligence theory of relief. Nor was any such notice provided in the plaintiff's pre-trial memorandum.

(E) The plaintiff has alleged several other grounds less substantial in nature as a basis for a new trial. We find them all without merit.

## ORDER

And now, this twenty-sixth day of April, 1968, it is ordered that the motion for judgment notwithstanding the verdict filed by plaintiff William Dantzler in the above-captioned action will be and hereby is denied.

It is further ordered that the motion for a new trial filed by the plaintiff will be and hereby is denied.