George R. EULO

v.

**DEVAL AERODYNAMICS, INC., a Delaware corporation, Deval Aerodynamics, Inc., a Pennsylvania corporation, John A. Baldinger and John Bello.**

**Civ. A. No. 31738.**

United States District Court
E. D. Pennsylvania.

March 30, 1969.

Arnold Ginsburg, Philadelphia, Pa., for plaintiff.

Jacob Richman, Philadelphia, Pa., for defendants.

## OPINION

MASTERSON, District Judge.

On July 13, 1962, the plaintiff, George R. Eulo, initiated this civil action here averring that he had suffered damages in the amount of $300,000.00 as a result of a libel published and distributed by the two corporate-defendants and two individual-defendants named in the caption. At the time he brought the suit the plaintiff was a resident and citizen of the state of New Jersey, the two individual-defendants were residents and citizens of the State of Pennsylvania, the defendant-corporation Deval Aerodynamics, Inc., hereafter referred to as DeVal, was a corporation incorporated under the laws of the State of Delaware with its principal place of business in Philadelphia, Pennsylvania, and, the defendant corporation Deval Aerodynamics, Inc., hereafter referred to as DeValPa, a wholly owned operating subsidiary of DeVal, was a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. At all times relevant to the suit the individual-defendants, John A. Baldinger and John Bello, hereafter referred to respectively as Baldinger and Bello, were officers and directors of both DeVal and its subsidiary DeValPa. Jurisdiction in this Court was grounded upon the diversity of citizenship of the parties and an amount in controversy in excess of $10,000.00 (in addition to his claim for $300,000.00 in compensatory damages the plaintiff claimed $200,000.00 in punitive and exemplary damages). Title 28 U.S.C. § 1332.

This case came to trial on Friday, March 8, 1968. The trial consumed approximately fifteen full trial days and the Charge of the Court was delivered on Monday, April 1, 1968. Pursuant to Rule 49(b) of the Federal Rules of Civil Procedure, and with the agreement of counsel, the Court submitted to the jury six separate written interrogatories which the jury was directed to answer

at the same time it rendered its general verdict. The jury retired to deliberate at 2:40 P.M., Monday, April 1, 1968, and returned a verdict in favor of the plaintiff in the amount of $.06 at 5:20 Wednesday afternoon, April 3, 1968.[1] Judgment in this amount, together with costs, was entered in favor of the plaintiff and against all the defendants on April 4, 1968.[2]

Currently before the Court are four post-trial motions made by the respective parties:

(1) plaintiff's motion for a new trial, filed April 16, 1968;

(2) defendants' motion for judgment notwithstanding the verdict, filed April 16, 1968;

(3) plaintiff's motion to dismiss defendants' motion for judgment notwithstanding the verdict, filed on April 22, 1968; and

(4) defendants' motion to dismiss plaintiff's motion for a new trial, filed on April 26, 1968, and defendants' amended motion to dismiss plaintiff's motion for a new trial, filed on April 29, 1968.

For reasons discussed below the defendants' motion to dismiss is denied, the plaintiff's motion to dismiss is granted, the defendants' motion for judgment notwithstanding the verdict is dismissed, and the plaintiff's motion for a new trial is denied.

I

On Tuesday, April 16, 1968, plaintiff's counsel filed plaintiff's motion for a new trial. Counsel for the defendants filed a motion to dismiss plaintiff's motion for a new trial on April 26, 1968, and, three days later, he filed an amended motion to dismiss. Both motions were made on

---

1. Following are the written interrogatories submitted to the jury together with the jury's answers to the interrogatories which are underscored:

"1. Do you find in favor of the plaintiff or in favor of the defendants? Plaintiff.

(IF YOU FIND IN FAVOR OF THE DEFENDANTS DO NOT ANSWER ANY OF THE FOLLOWING INTERROGATORIES).

2. If you have found in favor of the plaintiff against which of the defendants have you found? (CIRCLE YOUR ANSWER)

(a) Deval Aerodynamics, Inc. of Penna. (the operating company).

(b) Deval Aerodynamics, Inc. of Del. (the parent company).

(c) Mr. Bello.

(d) Mr. Baldinger.

3. If you have found in favor of the plaintiff in what amount do you assess damages? 6¢

4. If you have found in favor of the plaintiff signify that part of the award, if any, which is attributable to each of the following categories of damages:

(a) general damages—6¢

(b) special damages—Nothing

(c) punitive damages—Nothing

(IF NO PART OF THE DAMAGES WHICH YOU HAVE AWARDED TO THE PLAINTIFF IS ATTRIBUTABLE TO SPECIAL DAMAGES DO NOT ANSWER THE FOLLOWING INTERROGATORIES)

5. If you have found in favor of the plaintiff and part of the damages which you have awarded him are attributable to special damages, what portion, if any, of this part of your award is attributable to the stock option which the plaintiff allegedly was to receive from the Platt Co.?

(IF NO PART OF THE SPECIAL DAMAGES WHICH YOU HAVE AWARDED TO THE PLAINTIFF IS ATTRIBUTABLE TO THE STOCK OPTION PLAN DO NOT ANSWER THE FOLLOWING INTERROGATORY).

6. If you have awarded the plaintiff special damages based in whole or in part upon the alleged stock option offer, what, if any, amount of your award is attributable to the alleged increase in value of the assets of Platt Co.?

2. There is some confusion on the record as to whether judgment was entered on April 3 or April 4, 1968. The problem is discussed and resolved in favor of April 4, infra, p. 5.

the grounds that the motion for a new trial had been filed in violation of Rules 6(d), 59(b), and 59(c) of the Federal Rules of Civil Procedure. Plaintiff has opposed these motions by contending that his motion for a new trial was served in a timely fashion. In support of this contention plaintiff's counsel filed a personal affidavit of service of the motion for new trial. See, Affidavit, filed May 1, 1968, and generally, Brest v. Philadelphia Transportation Co., 273 F. 2d 22, 23 (C.A. 3, 1959) (emphasizing the importance of noting on the record the time service of a motion was made), and Moore, Federal Practice, Volume 2, ¶ 509, p. 1373. Defense counsel has not filed any opposing affidavits.

Rule 59(b) of the Federal Rules of Civil Procedure provides that " * * (a) motion for a new trial shall be *served* not later than 10 days after the entry of the judgment". Accordingly, resolution of the defendants' motions to dismiss the plaintiff's motion for a new trial depends upon a determination of: (1) when the judgment in this case was entered; and (2), whether service of the motion was made " * * * not later than 10 days after the entry of the judgment."

Confusion as to when judgment in this case was entered arises from conflicting references in the record. A paper entitled "Judgment", and purporting to be an entry of judgment, is dated April 3, 1968, and marked "Filed" as of that date. On the other hand, a notation of the entry of judgment in the Civil Docket which is maintained by the Clerk of this Court pursuant to Rule 79(a) of the Federal Rules of Civil Procedure, indicates that judgment was entered on April 4, 1968.

 Prior to 1963 this confusion easily could be resolved under Rule 58

of the Federal Rules of Civil Procedure which provided:

"(t)he notation of a judgment in the civil docket as provided by Rule 79(a) constitutes the entry of the judgment; and the judgment is not effective before such entry."

Accordingly, there would then have been no doubt that judgment was entered on April 4, 1968:

"The time of the signature of a final decree by the judge and receipt by the clerk, even though the clerk marks it 'filed' as of that time, does not constitute the date of the entry of judgment. This latter date is when the clerk makes the proper notation in the civil docket as contemplated by Rules 58 and 79(a).", Moore, Federal Practice, Volume 6A, ¶ 58.03[1], p. 3508.

See also, Neely v. Merchants Trust Co. of Red Bank, 110 F.2d 525, 526 (C.A.3, 1940), cert. den. 311 U.S. 705, 61 S.Ct. 171, 85 L.Ed. 457.

In 1963, however, Rule 58 was amended to provide, in pertinent part, as follows:

" * * * Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)."

One of the more significant changes in the rule is the additional provision that each judgment must be set forth in writing on a separate document. The language of the Rule, and comments by the Committee recommending the change indicate, however, that this amendment does not alter the prior law that entry of judgment is to be determined by the date the appropriate notation is made in the civil docket. See, Moore, supra, 1968 Supplement, ¶ 58.02, pp. 25–26, and Vol. 7, 1968 Supplement, ¶ 79.02[2], p. 131. Accordingly, the Court must hold that judgment was entered in this case on April 4, 1968.[3]

---

3. Prior to 1963 the defendant could have argued that judgment was entered on April

3, 1968, because it should have been, in that Rule 58 directed the Clerk of the

The second question to be answered in resolving the defendants' motion is whether service of the motion for a new trial was made "* * * not later than 10 days after * * *" April 4, 1968. For purposes of computing this ten day period the Court is guided by the provisions of Rule 6(a), as amended in 1963:

"(a) COMPUTATION. In computing any period of time prescribed or allowed by these rules * * * the day of the act * * * (or) event * * * from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday."

Application of Rule 6(a) to the facts of this case indicates that service of plaintiff's motion for a new trial was proper if performed on or before April 15, 1968.

■ In the Affidavit of Service filed in support of his answer to the defendants' motions to dismiss plaintiff's counsel states that,

"* * * on Monday, April 15, 1968, he served upon Jacob S. Richman, Esquire, attorney for defendants, a true and correct copy of plaintiff's Motion for A New Trial * * * by mailing the same to said Jacob S. Richman, Esquire, at his last known address * * * (and) that he personally deposited the same in the United States mails, in a sealed envelope, with first-class postage thereon fully prepaid * * *", Affidavit, supra, pp. 1–2.

In the absence of opposing affidavits filed by defense counsel this Court must conclude that service properly was made on April 15, 1968, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure which permits service to be made by use of the mail upon a party's attorney at the latter's last-known address. See generally, Moore, supra, Vol. 2, ¶ 5.06, ¶ 5.07. Furthermore, plaintiff filed his motion for a new trial on April 16, 1968, the day after he served the motion, and this constituted satisfactory compliance with Rule 5(d)'s provision that papers required to be served upon a party "* * * shall be filed with the court either before service or within a reasonable time thereafter."

■ For the reasons discussed above the Court has concluded that the plaintiff's service of his motion for a new trial was timely. Accordingly, the defendants' motion to dismiss the plaintiff's motion for a new trial and the amended motion to the same effect, are denied.[4]

Court to enter a judgment "forthwith". Since the Court did not evidence an intention to enter judgment on April 3, and since the Clerk's notices to the parties referred to the entry of judgment on April 4, however, it is unlikely that the defendant would have prevailed on this contention. See respectively, Burke v. Commissioner of Internal Revenue, 301 F.2d 903, 904 (C.A. 1, 1962), and Danzig v. Virgin Isle Hotel, Inc., 278 F.2d 580, 582 (C.A. 3, 1960), and, generally, Barron and Holtzoff, Federal Practice, Vol. 3, 1967 Pocket Part, § 1283, p. 188.

The 1963 Amendments to Rule 58 require the Court to approve the form of judgment to be entered when there has been a general verdict accompanied by answers to interrogatories, and, hence,

their adoption would seem to preclude the defendant from successfully advancing this contention.

4. In their amended motion the defendants added to the contentions discussed above a fourth contention in support of dismissal of the plaintiff's motion for a new trial. They argued that the plaintiff had violated Local Rule 31 of the Rules of Civil Procedure of this Court, which provides, in pertinent part:

"Unless, within ten days of filing a post-trial motion, (a) the transcript is ordered by a writing delivered to the official court reporter, or (b) good cause for failure to order such transcript is shown in motion supported by an affidavit * * * the post-trial

## II

On Tuesday, April 16, 1968, counsel for the defendants filed and served a motion for judgment notwithstanding the verdict. On Monday, April 22, 1968, the plaintiff filed a motion to dismiss the defendants' motion for judgment notwithstanding the verdict on the grounds that: (1) the defendants' motion had not been filed properly pursuant to Rule 6(b), and Rule 50(b) of the Federal Rules of Civil Procedure; and (2), in filing their motion the defendants failed to comply with Local Rule 31, supra, f. n. 4.

The defendants' motion for judgment notwithstanding the verdict was made under Rule 50(b) of the Federal Rules which provides, in pertinent part:

"Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside * * *."

As has already been established, supra, judgment in this case was entered on April 4, 1968. As also discussed supra, application of Rule 6(a) to the facts of this case indicates that a post-trial motion in this case properly could have been made only on or before April 15, 1968. The record indicates that the defendants neither filed nor served their motion by that time, but, instead, that they filed and served it on April 16, 1968.

■ Although the misfeasance of the defendants' counsel was de minimis, the mandatory language of the Federal Rules does not permit this Court to entertain the defendants' motion. See, Johnson v. New York, N. H. & H. R. Co., 344 U.S. 48, 50, 73 S.Ct. 125, 97 L.Ed. 77 (1952). Even had the defendants petitioned this Court pursuant to Rule 6(b) to enlarge the time period within which to file their Rule 50 motion, the literal language of the former statute, as consistently interpreted by the courts, indicates that it would have been improper for this Court to do so. See, United States v. Robinson, 361 U.S. 220, 229, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960). Accordingly, the plaintiff's

---

motion will be dismissed for want of prosecution."

Within the prescribed ten-day period the plaintiff filed both a motion pursuant to Rule 31(b), requesting this Court to excuse him " * * * from ordering a transcript * * *", and an order directing the court reporter to transcribe the complete record of testimony, if the court ruled adversely to his 31(b) motion. The defendants' contention therefore is without merit.

On September 9, 1968, the Court granted the plaintiff's Rule 31(b) motion in part by ordering that he only had to order that portion of the transcript which covered the Court's charge and the later incidents at the time the jury rendered its verdict. The Court reached this decision upon consideration of two sworn-to representations of plaintiff's counsel: (1) that the costs of a complete transcript were unduly burdensome for his client; and (2) that there would be " * * * no need to refer to a transcript in considering most, if not all, of the grounds stated in plaintiff's motion for a new trial * * *", Motion Under Rule 31, p. 2, and Attached Affidavit of plaintiff's counsel, filed April 24, 1968. Subsequently the plaintiff complied with this Order.

It should be emphasized that to the extent that the plaintiff's motion for a new trial relates to matters which are dehors the record because of the plaintiff's failure to order a complete transcript this Court will be justified in resolving contested matters by drawing general inferences supporting the propriety of the conduct of the trial. See generally, Hollander v. Dawson Construction Co., 27 Dist. 555, 66 Pittsb.Leg.J. 97, 98 (1918). This rule is consistent with the Court's power, pursuant to Rule 83 of the Federal Rules of Civil Procedure, to enact and implement its own local rules by imposing sanctions upon a moving party's counsel for his negligence in complying with the rules, Cf. In Re United Corp., 283 F.2d 593, 596 (C.A. 3, 1960), and Woodham v. American Cystoscope Co., 335 F.2d 551, 556–557 (C.A. 5, 1964), and/or by dismissing a motion for lack of prosecution. See Hicks v. Bekins Moving & Storage Co., 115 F.2d 406, 408–409 (C.A. 9, 1940), Dantzler v. Defender Shipping Co., 285 F.Supp. 541, 544 (E.D. Pa., 1968).

motion to dismiss is granted, and the defendants' motion for judgment notwithstanding the verdict is denied.[5]

## III

*The Court's Charge*

In support of his motion for a new trial plaintiff urges initially that the Court committed error in the course of its instructions to the jury. The plaintiff's contentions may be summarized as follows: 1) the overall tone of the charge favored the defendant and hence prejudiced the plaintiff's rights to have the jury instructed in an impartial fashion; 2) the Court failed to charge certain of the plaintiff's requests for instructions and/or charged certain requests in an incomplete fashion; and 3) the Court instructed the jury about nominal damages although counsel had not requested such a charge, and although this item of damages allegedly was not relevant to the case.

■ Rule 51 of the Federal Rules of Civil Procedure specifies the procedure to be followed in advancing objections to a court's instructions to a jury:

"* * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

In the absence of fundamental error in the charge courts uniformly have applied Rule 51 by refusing to entertain general and vague objections to a charge, particularly when the moving party has failed to advance his objections at the proper time, i. e. at the close of the charge. See, Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943), and, e. g. Tromza v. Tecumseh Products Co., 378 F.2d 601, 604 (C.A. 3, 1967), Rodriguez v. Brunswick Corp., 364 F.2d 282, 286 (C.A. 3, 1966). To the extent, therefore, that plaintiff's contentions are only general in nature, and to the extent that plaintiff advanced his objections for the first time after the jury returned its verdict, this Court could be justified in denying his motion.

■ Assuming that plaintiff had preserved his right to advance these general contentions, it nevertheless is clear that they are without merit. For example, in support of his argument that the tone of the charge was prejudicial and reflected the Court's bias for the defendants, plaintiff has alleged that the Court erred in instructing the jury as follows:

"* * * you will have done your duty if you render a judgment in favor of the defendant just as much as you will have done your duty if you render a judgment in favor of the plaintiff." (N.T., p. 5);

and,

"You will not raise any inference from the fact that I am charging you extensively about damages or handing out this questionnaire which principally relates to damages." (N.T., p. 22).

It is difficult to perceive how these statements per se were prejudicial to the plaintiff. See generally, Federal Jury Practice and Instructions, Mathes and Devitt, 1965, § 78.05, p. 439. Moreover, the propriety of a charge must be determined by a review of the charge as a whole. See generally, Kube v. Bethlehem Steel Corporation, 390 F.2d 506, 510, f. n. 14 (C.A. 3, 1968), and Charles

5. In view of this disposition it is not necessary to reach the plaintiff's alternative contention that the defendants' motion must be dismissed because of the failure of counsel for the defendants to comply with Local Rule 31. Since counsel for the defendants filed neither of the orders required by Rule 31, however, it is clear that the Court could have appropriately dismissed the defendants' motion on this ground. See cases cited supra, f. n. 4, particularly *Dantzler*, supra, 285 F.Supp. at 523, 524 (E.D.Pa., 1967), and Tarter v. Mylin, 258 F.Supp. 818, 819 (E.D. Pa., 1966).

A. Wright, Inc. v. F. D. Rich Co., 354 F. 2d 710, 713–714 (C.A. 1, 1966), cert. den. 384 U.S. 960, 86 S.Ct. 1586, 16 L. Ed.2d 673 ("The fairness of a charge cannot be determined by considering only a portion of it out of context."). The transcript indicates that the charge covered each of the six interrogatories which counsel had agreed to submit to the jury, and that the Court explained all damages to which the plaintiff conceivably could be entitled including a claim for a lost job only tenuously supported by evidence which the Court, perhaps improperly, had permitted to be introduced at trial. Upon review of the transcript the Court is unable to conclude that the charge favored one party or the other.

Not surprisingly, in view of the size of the verdict, the crux of the plaintiff's differences with the Court's charge relates to the instructions regarding damages. In advancing even these claims plaintiff's counsel demonstrated only minimal compliance with Rule 51, i. e. he raised timely objections only as to the narrow issue of special damages (N.T., pp. 35, 44–45), first opposing the instruction as to nominal damages only *after* the jury had rendered its verdict. (N.T., p. 149). In view of the importance of the issue, however, and because counsel arguably did call the attention of the court to his objections in timely fashion, See, Mumma v. Reading Co., 247 F.Supp. 252, 259 (E.D.Pa., 1965), some

explanation of the Court's handling of this issue is warranted.

 It must be noted preliminarily that certain of plaintiff's specific complaints regarding the Charge as to damages are clearly without merit. First, it was not error, as the plaintiff has contended, to refuse to give certain requested instructions verbatim, even though these instructions accurately reflected the law, since those of the requests which were accurate were covered fairly in the general instructions. See, Lecklikner v. Transandina v. Jarka, 390 F.2d 179, 181 (C.A. 3, 1968). Secondly, it was not error to charge the jury as to certain matters which were not covered by counsels' requests for instructions, for these were matters which were relevant to the jury's deliberation in the case and if in fact counsel was surprised at their inclusion in the charge he could have requested re-argument. Cf. Terminal R. Ass'n of St. Louis v. Staengel, 122 F.2d 271, 278, 136 A.L.R. 789 (C.A. 8, 1941), cert. den. 314 U.S. 680, 62 S.Ct. 181, 86 L.Ed. 544. Finally, it was not error for the Court to give its opinion of, and comment on, the evidence, since the Court emphasized that the jury was the ultimate fact-finder. See, e. g. Gimbel Bros., Inc. v. Markette Corp., 200 F.Supp. 95, 99 (E.D.Pa., 1961), and Cherry v. City of Philadelphia, 188 F.Supp. 500, 503 (E.D.Pa., 1960).[6]

---

6. At the conclusion of the charge plaintiff's counsel suggested that the Court had adverted to the facts regarding special damages " * * * in such a way that the jury might conclude that you believe that a holding for the defendants would be proper there." (N.T., p. 35). The relevant portion of the transcript indicates that, although the Court could have, it never did state its own belief as to the plaintiff's claim for special damages. (N.T., pp. 26–31). Moreover, the Court consistently punctuated its rendition of these facts with the reminder to the jury that "You have to decide basically who is telling the truth * * *" (N.T., p.

27), " * * * you determine what is the likelihood here * * *" (N.T., Ibid). Indeed, the Court stressed the fact that the jury was the ultimate fact-finder at the very beginning of the charge:

"In the event at any time during the case or during the closing arguments or during this charge either counsel or the court has said something to you with respect to the evidence which differs from your corporate recollection of the evidence, then you discard what we have said because it is your judgment of the evidence which is to determine the issue before you, not counsel's or not mine. The evidence is what you

Plaintiff's essential grievance with the Court's instructions regarding damages is his contention that it was improper to charge the jury about nominal damages. Plaintiff's contention ostensibly is based upon the general provisions governing the measure of damages in defamation actions as summarized in the Restatement of Torts, Vol. III, §§ 620–623. In effect plaintiff argues that in a case such as this, involving libel per se, if a jury finds liability it must return a verdict for substantial general damages pursuant to § 621, which provides:

"One who is liable for a libel or for a slander actionable per se is liable for harm caused thereby to the reputation of the person defamed or in the absence of proof of such harm, for the harm which normally results from such a defamation.",

and *can not* return a verdict limited to an award of nominal damages. The plaintiff argues further that there are four categories of damages involved in a libel suit and that the Court was precluded both from making reference in the charge to nominal damages and from accepting a verdict in such amount when it had submitted to the jury written interrogatories referring to only three of these categories, i. e. general damages, special damages and punitive damages.

 Plaintiff's position reflects an inaccurate understanding of the nature of nominal damages, which, if they must, accurately would be categorized as a form of general damages. See, Harvard Law Review, "Developments in the Law of Defamation", Vol. 69, 1956, p. 934 et seq. General damages in a substantial amount *may* be awarded in circumstances where a plaintiff is unable to show a definite loss and where,

"* * * the defamatory publication is of such kind * * * as to justify the inference of some general im-

pairment of his reputation * * *", Rest., supra p. 314 (Comment [a] to § 621).

But, the Restatement does not indicate that substantial damages *must* be awarded in all cases of libel per se. Instead, it indicates that it is proper to have an award for only nominal damages in those cases,

"* * * where the insignificant character of the defamatory matter * * * lead(s) the jury to believe that no substantial harm has been done * * * and (that) there is no proof that material harm has resulted from the defendant's attack * * *", Ibid., p. 313 (Comment [a]).

See also, "Defamation", supra, p. 934.

 The well-settled law of Pennsylvania reflects the propriety of instructing a jury in a libel case about nominal damages as well as general, special, and punitive damages. See, e. g. Weider v. Hoffman, 238 F.Supp. 437, 441–442 (M. D. Pa., 1965), and Palmer v. Leader Publishing Co., 7 Pa.Super. 594–598 (1898), Wood v. Boyle, 177 Pa. 620, 627, 632, 35 A. 853 (1896). The single Pennsylvania case upon which plaintiff relies is distinguishable on its facts since there the trial judge improperly instructed the jury that the verdict "* * * must be only such sum as would vindicate the plaintiff * * *", and gave an incomplete instruction as to more substantial general damages. See, Leppley v. Smith, 91 Pa.Super. 117, 120 (1927).

 Assuming arguendo that the instruction regarding nominal damages was proper, plaintiff has contended that the Court erred by excessively stressing nominal damages and inadequately instructing as to substantial damages. Particularly objectionable, according to

---

have heard from the witness-stand from witnesses—it is not the arguments * * *" (N.T., pp. 3–4);

and,
"You are the ultimate finder of the facts in this case.", (N.T., p. 3).

the plaintiff, was the following reference to nominal damages:

"You have heard, no doubt, of 6-cent verdicts in libel cases. Six cents is the amount of nominal damages which have been awarded by juries who say in substance: 'Yes, we vindicate the plaintiff's reputation. The publication was false and defamatory, but we believe it did him no serious injury.' They find for the plaintiff and give him damages of six cents. There are many famous cases where that has been done." (N.T., pp. 25–26).

The portion of the charge quoted above was the Court's singular explanation of nominal damages. Before and after making this reference the Court emphasized that the jury was free to award any amount in general damages from nominal to substantial damages. (N.T., pp. 24–26). It is perhaps not coincidental that the plaintiff decided to object to the Court's reference to nominal damages only after the jury had returned a verdict.

Of course the fact that the verdict was in the amount of six cents, as specifically mentioned by way of example in the charge, does not strengthen the plaintiff's position, since this award obviously reflected the jury's conclusion that the plaintiff had failed to prove that as a result of the defamation he had suffered damages or was likely to suffer damages in the future. Undoubtedly plaintiff's counsel would have advanced his present contentions even had the award been in the amount of some other nominal sum, i. e. $1.00, 2 cents, etc.

*Inadequacy of Damages*

Plaintiff urges that, even if the issue of nominal damages properly was submitted to the jury, an award of nominal damages in this case was " * * * grossly inadequate and unjust". Motion for a New Trial, p. 11. As support for this proposition he relies upon Schuerholz v. Roach, 58 F.2d 32, 34 (C.A.

4, 1932), *cert. den.* 287 U.S. 623, 53 S. Ct. 78, 77 L.Ed. 541 (1932), Pugh v. Bluff City Excursion Co., 177 F. 399, 401 (C.A. 6, 1910), Gardner v. Vogel, 237 F.Supp. 119, 121 (E.D.Pa., 1964), Davison v. Monessen Southwestern Railway Co., 144 F.Supp. 599, 600 (1956), and Walbert v. Farina, 411 Pa. 400, 404, 192 A.2d 404 (1963).

Of course this Court always has the power to set aside a verdict, on the grounds that the verdict is inadequate, and to grant either a complete new trial or a new trial limited to the issue of damages. See generally, Moore, Federal Practice, Vol. 6A, ¶ 59.08 [6], p. 3821 et seq. This power is to be exercised only rarely, however, when

" * * * *under the law*, the plaintiff is entitled *as of right* or according to an established formula, to a minimum of special damages, or (when) the verdict of the jury as to general damages, considering the elements involved, is so inadequate as *to shock the conscience of the court,* * * * *",* Caldwell v. Southern Pacific Co., 71 F.Supp. 955, 962 (S.D.Calif., 1947), (Emphasis not supplied)

For example, this power should not be exercised merely for the purpose of substituting the court's own judgment for that of the jury. See, e. g. Zellem v. Herring, 102 F.Supp. 105, 106 (W.D. Pa., 1952), and generally, Moore, supra, p. 3824. Particularly in a libel case,

" * * * the jury is generally considered to be the supreme arbiter on the question of damages * * * where the elements of wounded sensibilities and loss of public esteem play a part.", Walrus Manufacturing Co. v. Excel Metal Cabinet Co., 161 F.Supp. 840, 843–844 (W.D.N.Y., 1957).

A verdict for nominal damages in a libel case, as in any other tort action seeking unliquidated damages, of course is not per se an inadequate verdict, See, *Weider,* supra, 238 F.Supp. at 447 (where the trial judge

in a libel case directed the entry of a verdict in the amount of $1.00 nominal damages). For example, an award of nominal damages in a libel case, as in other tort cases, will be justified where,

"* * * there has been a breach of duty or infraction or invasion of a right, but no real, substantial or serious loss or injury has been established." Stevenson v. Economy Bank of Ambridge, 413 Pa. 442, 455, 197 A. 2d 721, 727, 4 A.L.R.3d 1450 (1964).

See also, Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 483–485, 53 S.Ct. 252, 77 L.Ed. 439 (1933), Wintergerter v. Maryland Casualty Co., 313 F.2d 754, 756 (C.A.5, 1963), and, *Weider,* supra, 238 F.Supp. at 447.

Plaintiff has argued, however, that in this case it was not possible to conclude that all four defendants were liable to the plaintiff for libel, as the jury's responses to Interrogatory 2 indicated it did, and nonetheless return a verdict in the amount of nominal damages. His syllogism in support of this conclusion is simply: (1) the jury found that there was a libel actionable per se; (2) this means that the jury found that the plaintiff had been libeled with respect to his business, profession, or trade; therefore (3), the award of only nominal damages was patently inadequate. This logic is unconvincing.

The libelous statement underlying plaintiff's action is found on the second and third pages of a newsletter to shareholders prepared and mailed by Deval in May, 1962:

"At the last annual meeting held at the Sheraton Hotel on November 2, 1961, Mr. Eulo gave an account of his stewardship as President and the un-audited figures revealed that the company had an operating loss for the fiscal year of $431,047.44, according to the audited statement issued by

Isaac Abrahams & Co., Certified Public Accountants.

Needless to say, this huge loss caused consternation to all shareholders and inquiries began to determine the cause of this great loss and to seek remedies to end further losses and to turn the company again into a profitable operation which it had always been heretofore. Accordingly, on January 5, 1962, at a special meeting of the Board of Directors, there was a change in management. Mr. Eulo resigned as President and Mr. Schulman resigned as Chairman of the Board of Directors, and Mr. Shalleck, Mr. Lipton, and Mr. Biegen all offered their resignations as directors." (Exhibit P–1, pp. 2–3).

After lengthy deliberations the jury concluded that this statement had libeled the plaintiff. The award indicated, however, that the jury was not convinced by the plaintiff's evidence that either he had been harmed by the libelous statement and/or that substantial general damages would "normally result" from such a defamation. See, Restatement of Torts, supra, § 621.

The only evidence which the plaintiff offered to prove *actual harm* was the testimony of a prospective employer. Insofar as this Court is able to recall, this testimony was ambiguous and somewhat incredible, and certainly the jury acted within its proper discretion in deciding to reject this testimony in toto.[7]

In determining what harm would "normally result" from such a defamation the jury evidently considered a variety of factors, i. e.,

"* * * the character of the defamatory publication and the probable effect of the language used * * * the area of dissemination and the extent and duration of the circulation

---

7. Of course the plaintiff's failure to order a transcript of the trial actually relieves this Court of the obligation to even con-

sider those of his contentions which relate to evidence presented at trial. See, supra, f. n.'s 4 and 5.

48

of the publication * * * ", Ibid., p. 315 (Comment [c]).

The evidence presented at trial, again insofar as the Court is able to recall without the assistance of a transcript, indicated that the defamatory passage was non-malicious in nature and that it had been disseminated, at most, only for a limited period of time and to a small number of persons other than the privileged recipients, i. e. the shareholders. Moreover, the plaintiff's "trade" is that of a manufacturer's representative and to the extent that the defendants' statement libeled him it did so only with respect to his abilities as a corporate executive. Since the time of the libel the plaintiff has been employed as a manufacturer's representative at salaries at least equivalent to those which he received prior to the publication of the statement.

█ Admittedly no single factor noted above in and of itself would require the jury to award only nominal damages, or, in the alternative, would preclude the jury from awarding substantial general damages. All these factors were relevant to the jury's assessment of the plaintiff's damages, however, and the Court is unable to hold that the ultimate determination that the plaintiff had suffered only a "technical" libel was unreasonable or grossly inadequate.

None of the cases relied upon by the plaintiff requires an opposite decision. Two of these cases involved wrongful death actions in which the jury's verdicts in the respective amounts of $1.00 and $4,200.00 were patently inadequate in view of the uncontradicted evidence of very substantial damages. See, *Pugh*, supra, 177 F. at pp. 400–401, and *Walbert*, supra, 411 Pa. at p. 403, 192 A.2d 404. In two other cases the juries awarded $625.00 and $3,000.00 as compensation for, respectively, the loss of an eye, and severe whiplash injuries requiring " * * * innumerable physiotherapy treatments * * * considerable seda-

tion * * * and * * * much time in traction." *Gardner*, supra, 237 F. Supp. at pp. 120–121, and *Scheuerholz*, supra, 58 F.2d at p. 34. In the fifth case the jury found the defendant liable for an accident which had resulted in the removal of part of the bone from the plaintiff's shoulder and yet made no allowance at all for pain and suffering. See, *Davison*, supra, 144 F.Supp. at p. 600.

In each of the cases cited by the plaintiff the jury's award admittedly was grossly inadequate and inconsistent with the evidence of damages and the findings of liability. In none of these cases, as in this case, however, did the plaintiff seek damages for injury to his reputation and advance evidence which can be characterized, at best, as vague and contradictory.

*Compromise Verdict*

█ Closely related to the plaintiff's contention that the damages were inadequate is his contention that the jury's verdict was an invalid compromise verdict, i. e.,

" * * * a verdict * * * arrived at by compromise, by which some jurors surrender their conscientious convictions as to material issues or right of recovery in return for certain concessions by the other jurors on another issue, or issues * * *." Kingsport Utilities Inc. v. Lamson, 257 F.2d 553, 559 (C.A.6, 1958).

Plaintiff urges the Court to draw this conclusion from a consideration of the following factors: (1) the damages awarded were inadequate under the law and facts of the case; (2) the jury deliberated for fifty hours; (3) the jury reported that it was "hopelessly deadlocked"; (4) during the later part of its deliberations the jury submitted to the Court five requests for instructions, four of which related to the issue of liability; (5) Juror No. 2, when first interrogated by the Clerk of the Court pursuant to plaintiff's counsel's request to

have the jury polled, responded that he was finding for the defendants and not for the plaintiff; and (5),

"Upon information and belief, at least six * * * jurors * * * surrendered their conscientious convictions on the material issue of damages in return for a compromise verdict awarding plaintiff only nominal damages * * * ", Motion for a New Trial, pp. 10–11.

█ Courts often have discarded verdicts and ordered new trials in civil actions on the basis that the jury improperly reached a verdict by compromising its conscientious convictions. See, e. g. *Scheuerholz*, supra, 58 F.2d at p. 34, *Pugh*, supra, 177 F. at p. 401, and *Davison*, supra, 144 F.Supp. at p. 600. There is, however, always a presumption in favor of the validity of a verdict, See, e. g. Brunswick-Balke-Collender Co. v. Foster Boat Co., 141 F.2d 882, 886 (C.A. 6, 1944), and *Kingsport*, supra, 257 F.2d at 559, and a court should not conclude that a verdict is the result of an invalid compromise unless there is support for such a conclusion on the face of the trial record. See generally, Bartholomew v. Universe Tankships, Inc., 263 F.2d 437, 448 (C.A.2, 1959), and Maher v. Isthmian Steamship Company, 253 F.2d 414, 417–419 (C.A.2, 1958).

█ In cases where the plaintiff seeks liquidated and/or uncontested damages it is, of course, relatively easy to determine whether the verdict has been the product of an invalid compromise. In cases like the present, however, which involve claims for unliquidated damages, courts generally have held that there has been a compromise verdict only when they have first decided that the damages awarded were grossly inadequate. See, e. g. *Scheuerholz*, supra, *Pugh*, supra, and *Davison*, supra.

█ For reasons discussed at length above this Court is unable to conclude that the damages awarded in this case were grossly inadequate. Just as

unavailing in support of plaintiff's contention that there was a compromise verdict are the facts that the jurors reported they were "hopelessly deadlocked", See, *Maher*, supra, 253 F.2d at p. 419, and that the jurors requested instructions related to the issue of liability. Moreover, the plaintiff's allegation that the jury deliberated more than fifty hours is simply wrong, i. e. the transcript indicates that at most the jury deliberated for a total of 20 hours. Even if the jury had deliberated for fifty hours, however, and, even if as a matter of law such lengthy deliberation could be considered to have impugned the integrity of the verdict, plaintiff's counsel waived this objection by his own continued insistence that the Court permit the jury to deliberate further. (N.T., p. 63, 83). Plaintiff's counsel, rather than defense counsel who made a motion for a mistrial, insisted late in the afternoon of the next to last day of deliberations that the jury be permitted to "* * * try for at least one more day." (N.T., p. 83). Plaintiff's counsel can not now complain that the jury's deliberations were too lengthy and/or argue that he was just about to ask for a mistrial when the jury returned its verdict.

The contention in support of a new trial which the plaintiff advances most strongly, however, relates to incidents which occurred at the time the jury rendered its verdict. After the foreman announced the verdict, the Court in accordance with a request of plaintiff's counsel, directed the Clerk to poll the jury. In responding to the Clerk's questions Juror No. 2 reflected a certain amount of confusion:

"THE CLERK: Juror No. 2, what is your answer to Interrogatory No. 1?

JUROR NO. 2: Nothing.

THE CLERK: Do you find in favor of the plaintiff or in favor of the defendants?

JUROR NO. 2: I don't know the meaning. I am afraid.

THE COURT: "I" what?

JUROR NO. 2: Nothing.

THE COURT: Do you know which party you have decided in favor of, whether in favor of the plaintiff Eulo or in favor of the defendants?

JUROR NO. 2: In favor of the defendants.

THE COURT: In favor of the defendants, all right." (N.T., p. 122).

It was clear to the Court that Juror No. 2, an elderly man most likely fatigued from the length of the trial and from the rigor of jury deliberations, was merely confused. Accordingly, the Court decided to interrogate him further:

"THE COURT: All right, let me ask you this: Did you agree with the verdict to be reported by your foreman as he announced his verdict of this jury?

JUROR NO. 2: Yes.

THE COURT: All right, and you believe the effect of that finding was to find in favor of the defendants. Is that what you are telling us?

JUROR NO. 2: That is right." (N.T., p. 123),

and somewhat later,

"THE COURT: Are you aware of the fact that the verdict reported by the foreman is a verdict for the plaintiff in the amount of six cents?

JUROR NO. 2: Yes, sir.

THE COURT: Did you vote for that verdict?

JUROR NO. 2: A hundred percent.

THE COURT: All right, let's pass on to the next one." (N.T., pp. 125–126).

At the conclusion of the polling of the jury, during which no other member of the jury expressed either confusion or disagreement with the verdict as announced by the foreman, the Court proceeded as follows:

"THE COURT: After the foreman arises, I want the foreman in the presence of the jury to read the reported verdict; and I want any juror who did not agree with that verdict to say so now before the verdict is recorded." (N.T., p. 136).

The Clerk of the Court read each interrogatory, and there was no dissent articulated in response to any interrogatory. (N.T., pp. 136–138) Although at this point the verdict seemed to be a valid and unanimous one the Court nonetheless entertained suggestions at sidebar from counsel to determine what, if any, further proceedings should take place.

At the conclusion of the side-bar conference the Court sent the jury out to deliberate further:

"THE COURT: Members of the jury, I think that the record is very clear as to what your unanimous verdict is. However, a question has been raised as to whether the verdict is truly unanimous in that one of your number stated inadvertently, I think, that he was finding for the defendants, believing, I suppose, that a six-cent verdict was equivalent to a finding for the defendants.

But so that the record would be clear, I should like you to withdraw again for a few minutes and be prepared to be queried again as to the first interrogatory; that is, in favor of whom do you find? * * *

If the foreman reports that you are not unanimous, then you are not unanimous; or if in the polling it becomes apparent you are not unanimous, you are not unanimous.

But I would like you to withdraw for however long it takes for you to be unanimous, both operating in a corporate manner through your foreman and operating individually as you are polled * * *

Until you are discharged, you are all free to change your votes, until I discharge you * * *" (N.T., pp. 146–148).

Twenty minutes later the jury returned and announced their unanimous verdict for the plaintiff in the amount of six cents. Upon being polled Juror No. 2 again reflected some confusion, but not as to the result, rather as to the proper classification of the damages. (N.T., p. 158). The jury's unanimous verdict was recorded. (N.T., p. 169).

The series of circumstances summarized above whether considered alone, or in conjunction with the other allegedly untoward events to which plaintiff's counsel has referred, does not indicate either that there was a compromise verdict or that the verdict was not unanimous. At the most Juror No. 2's hesitancy and confusion reflected his nervousness upon being asked to express his verdict individually. It was appropriate in these circumstances for the Court to interrogate the juror for purposes of ascertaining precisely what his position was. See, Harrison v. Paramount Pictures, 115 F.Supp. 312, 315 (E. D.Pa., 1953), Hilleary v. Earle Restaurant, 109 F.Supp. 829, 838 (D.C.D.C., 1952), and, generally, Moore, Federal Practice, Vol. 5, ¶ 49.07, p. 2300. The interrogation was limited to that amount necessary for accomplishing this single purpose. Cf. Bruce v. Chestnut Farms-Chevy Chase Dairy, 75 U.S.App.D.C. 192, 126 F.2d 224, 225–226 (1942).

Had further interrogation of Juror No. 2 indicated that he in fact dissented from the verdict announced by the foreman then it would have been proper under Pennsylvania law to direct a mistrial. See, Finn v. Carnegie-Illinois Steel Corporation, 68 F.Supp. 423, 430 (W.D.Pa., 1946), and Kramer v. Kister, 187 Pa. 227, 235, 40 A. 1008, 44 L.R.A. 432 (1898). This also would have been the proper course had the jury reflected such confusion as to render their verdict meaningless or invalid. See, e.g. Feeney v. Stieringer, 162 F.Supp. 540, 545 (W.D.N.Y., 1957). This Court was convinced, however, that Juror No. 2 neither intended to, nor, in fact, did

dissent from the verdict. Only out of an excess of caution did the Court decide to permit the jury to retire for purposes of re-considering their verdict. See, Harrison, supra, 115 F.Supp. at 315, Grober v. Capital Transit Co., 119 F. Supp. 100, 107 (D.C.D.C., 1954), and, generally, Pittsburgh v. Dinardo, 410 Pa. 376, 378, 380, 189 A.2d 886 (1963). In doing so the Court emphasized that the jury was free to change any part of its verdict, and that there was no compulsion to return the verdict originally announced by their foreman. The jury returned shortly and rendered its unanimous, valid verdict.

Plaintiff finally has suggested that the verdict must be discarded because he believes that certain jurors were dissatisfied with the verdict as it eventually was announced in court and recorded. Speculation unsupported by affidavit or other admissible testimony is, of course, not a proper basis upon which to reject a jury verdict. Even were the plaintiff able to present evidentiary support for this particular speculation, however, it is clear that the alleged dissatisfaction on the part of several jurors would not, in and of itself, constitute a basis for upsetting the verdict. See, Havranek v. Pittsburgh, 344 Pa. 375, 378–379, 25 A.2d 703 (1942).

*Miscellaneous Objections*

Throughout his motion and brief the plaintiff has advanced numerous contentions in support of his request for a new trial. None of these deserves the lengthy consideration given to those discussed above but three may be mentioned in summary fashion.

First, plaintiff contends that the supplementary "Allen" charge, and several other comments made by the Court to similar effect, prejudicially coerced the jury into reaching a decision. Considering the length of the trial, and the expense to which the respective litigants had already been put, it was not improper to employ the long-sanctioned

Allen charge. See, e.g. Muldrow v. Daly, 117 U.S.App.D.C. 318, 329 F.2d 886, 890 (1964), Silverman v. Travelers Insurance Co., 277 F.2d 257, 264 (C.A.5, 1960), and Cherry v. City of Philadelphia, 188 F.Supp. 500, 503 (E.D.Pa., 1960). Moreover, plaintiff has no standing to object now to the Court's willingness to permit the jury to deliberate further in view of the fact that his own counsel consistently favored such deliberation and, indeed, favored giving the Allen charge. (N.T., pp. 63, 69, 83).

Secondly, plaintiff contends that Juror No. 3 acted improperly through the trial as evidenced, inter alia, by a casual conversation with defense counsel. This charge is not compelling because of the plaintiff's failure either to allege what was said between the juror and defense counsel or to suggest that any influence was brought to bear upon the juror. See, Friedman v. Ralph Brothers, Inc., 314 Pa. 247, 250, 171 A. 900 (1934). The Court is particularly not prone to accept this contention in view of the fact that counsel waited until the conclusion of the trial to advance it. (N.T., pp. 141–144, 152–155).

Finally, the plaintiff has urged that the Court interfered too extensively with the conduct of the trial. The plaintiff has failed to order a transcript of the trial and support this allegation with specific references to the transcript. Accordingly, it would be proper, and consistent with rulings made on the plaintiff's motion under Local Rule 31, see supra, pp. 7–8, f. n. 4, for this Court to reject this contention without further consideration.

In fact, the Court requested the Court Reporter to review the transcript and transcribe the two solitary portions of testimony to which plaintiff's counsel had referred in support of this contention. The Court Reporter thoroughly reviewed the testimony of the two relevant witnesses and was unable to locate the precise testimony or the allegedly improper comments by the Court which plaintiff's counsel had cited. Insofar as the Court was able to re-construct the testimony without the assistance of a transcript, however, it recollected that interference with the course of plaintiff's counsel's cross-examination was de minimis and resulted only when necessary for purposes of clarification.

### ORDER

And now, this 20th day of March, 1969, it is hereby ordered that the defendants' motion and amended motion to dismiss the plaintiff's motion for a new trial in the above-captioned case are denied.

It is further ordered that the plaintiff's motion to dismiss the defendants' motion for judgment notwithstanding the verdict, in the above-captioned case, is granted, and the defendants' motion for judgment notwithstanding the verdict is hereby dismissed.

It is finally ordered that the plaintiff's motion for a new trial in the above-captioned case is denied.